THE KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS
RAILROAD COMPANY v. RICHARD D. SIMPSON.

1. COMMON CARRIER, *Not Relieved from Negligence.* A common carrier may relieve himself from the strict liability imposed on him by the common law by a special contract, but he cannot contract for exemption from the consequences of his own or his agent's negligence.

2. DAMAGES—*Recovery not Limited by Bill of Lading.* Where a horse was shipped by rail, and the bill of lading was signed by the carrier and the agent of the shipper, and provided, among other things, "value not to exceed $100," which was arbitrarily inserted in the bill of lading by the carrier, and through the carrier's negligence the horse was injured, *held*, in an action by the shipper for damages, that his recovery was not limited by the words "value not to exceed $100."

*Error from Atchison District Court.*

ACTION by *Richard D. Simpson* against *The Kansas City, St. Joseph & Council Bluffs Railroad Company* to recover $300 for damages alleged to have been sustained on account of injuries to a horse shipped from East Atchison to St. Joseph, Missouri. The defendant in its answer, among other things averred that it was induced to and agreed to carry and deliver the horse at the rate and price of $4 only, by reason of a contract that its risk, in case of damage thereto,

should not exceed $100, and that in no case would a breach of its said contract make its liability exceed that sum. The following is a copy of the contract:

### "LIVE STOCK.

#### [Extract from Freight Tariff.]

"At these rates the owner is to feed, water and take care of his stock at his own expense and risk, and is to assume all risk of injury or damage that the animals may do themselves, or to each other, or which may arise from any delay of trains; stock will only be taken by the car-load at the price fixed under 'special tariff' when a contract is executed by the station agent and shipper, to be loaded and unloaded, watered and fed by the owner, at his risk in all respects, except as specified in form of contract, or receipt below. Two cars will entitle owner or one driver to pass on the train with the stock, to take care of it. From three to seven cars will entitle two men in charge to pass on the stock train, which is the maximum number that will be passed on any train from one consignor or party, and at their own risk of personal injury from any cause whatever.

#### "ORIGINAL.

"The agent at the station where the stock is loaded will give no passes, but must enter on the back of the contract the name or names of the persons who actually accompany the stock, which is the authority of the conductor to pass them. Return passes will be given at the option of this company only.

"Live stock in quantities less than a car-load will be rated as follows: One horse or mule, 2,000 pounds; . . . non-enumerated live stock of all kinds not shipped under contract will be charged first-class rates, actual weight, not less than fifty cents each. Attention of shippers is especially directed to the fact that agents of this company are not authorized to make arrangements for forwarding live stock to be delivered at destination at a specified time. Due diligence will be observed in sending the same forward.

#### "CONTRACT.

"No. car, 742.—FREIGHT OFFICE, KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS R. R. Co., E. ATCHISON STATION, September 3d, 1881.—Received of William Towne, one horse, to be delivered at St. Jo. station, at special rates, being $— per car, back charges, $—. In consideration of which, and for other valuable consideration, it is hereby mutually

agreed that the said company shall not be liable for loss by jumping from the cars, delay of trains from any cause, or any damage said property may sustain, except such as may result from a collision of the train, or when cars are thrown from the track in the course of transportation. Nor will this company be responsible in any case for any loss or damage which may arise after said stock or property is delivered at the point on its line where it is consigned by this contract, or when it is to be turned over to any other company or boat for further transportation to its destination. Value not to exceed $100. To be fed and watered and taken care of by the owner. P. paid, $4.     (Signed)     D. BRISBOIS, Quad.
Wm. TOWNE."

Which contract is indorsed as follows:

"Kansas City, St. Joseph & Council Bluffs line. Stock contract with Wm. Towne, Sept. 3d, 1881. Not transferable. —D. BRISBOIS, East Atchison."

Trial had before the court and jury, at the February Term for 1882. The charge to the jury by Martin, J., was as follows:

" 1. This is an action to recover $300 for damages alleged to have been sustained on account of injuries to a horse, which was transported by defendant from East Atchison to St. Joseph, Missouri, over the line of its railroad, on or about the 3d of September, 1881.

" 2. The horse was transported by the defendant under a special written contract, of date September 3d, 1881, entered into between the defendant and one William Towne. It does not appear from the contract, a copy of which is set forth in defendant's answer, that said Wm. Towne was acting as agent for the plaintiff, nor for any other person. But if you find from the evidence that at the time of entering into said special contract the plaintiff, Richard D. Simpson, was the owner of said horse, and that said Wm. Towne was agent of the plaintiff, for the purpose of securing transportation, and acted as such agent, then the plaintiff will have the same rights under the said contract as if it had been entered into with him and in his name.

" 3. A railroad company engaged in the business of transporting live stock, assumes all the responsibilities of a common carrier. In the absence of any special contract binding its liability, it insures against all loss except that caused by the

act of God or of the public enemy. It may limit its liability by special contract with the shipper or consignor of the property, but such special contract can never relieve the railroad company from liability from its own negligence.

"4. The special contract in this case contains the following clause: 'Said company shall not be liable for loss by jumping from the cars, delay of trains from any cause, or any damage said property may sustain, except such as may result from a collision of the train, or when cars are thrown from the track in the course of transportation.' It will be observed that this special contract purports to limit the liability of the railroad company for injury to the property transported to two classes of perils, namely, 'collision of trains, and being thrown from the track.' But notwithstanding this contract, if the horse was injured by the negligence of the railroad company, or want of ordinary care on its part, then it would still be liable to the proper party for the injury, although such negligence did not result in 'collision of train,' nor 'in being thrown from the track.' In such case, however, the burden of proving such negligence is on the shipper, and it devolves upon him to prove such negligence by a preponderance of the evidence.

"5. Under the pleadings in this case, before the plaintiff is entitled to recover, you must be satisfied by a preponderance of the evidence of the existence of each and all the following facts, to wit: First, that the plaintiff was the owner of the said horse at the time of the transportation from East Atchison to St. Joseph, by the defendant; second, that said horse was injured during said transportation; third, that such injury to said horse was caused by the negligence of the defendant, or its failure to exercise ordinary care. Ordinary care is that degree of care which men of ordinary prudence usually exercise under like circumstances.

"6. If you find the existence of each and all of the three foregoing facts, then the plaintiff will be entitled to recover; otherwise, not.

"7. If you find that the plaintiff is entitled to recover, then the next question for your consideration will be to determine the amount of such recovery. Where property is injured by a common carrier, by reason of the negligence of the carrier, the rule of damages is, the difference between the value of the property as delivered at the time and place of delivery and the value at the same place at the time and in the condition that such property should have been delivered;

and this will be the rule, notwithstanding the fact that the shipping contract may contain a clause stating that the value of the property does not exceed a certain sum. But in the present case the damages cannot, in any event, exceed the sum of $300, which is the amount claimed in the petition.

"8. You are exclusive judges of all the questions of fact, and of the weight of the evidence and of the credibility of the witnesses.

"9. Two forms of verdict will be presented to you; one suitable for finding for the plaintiff and for assessing the amount of his recovery, and the other suitable for finding in favor of defendant.

"After you have heard the argument of counsel, take the case and do justice between the parties, under the law and the evidence."

The jury returned a verdict for the plaintiff, and assessed the amount of his recovery at the sum of $250. Judgment was entered thereon for plaintiff. *The Company* brings the case here.

*J. D. Strong,* and *C. A. Mossman,* for plaintiff in error.

*Smith & Solomon,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: It is contended on the part of plaintiff in error, that as the horse was transported by the railroad company under a special written contract entered into between the company and one William Towne, that Towne was the only person authorized to sue for a breach thereof, and that the plaintiff could not recover. Notwithstanding the fact that the railroad company contracted with Towne alone, and had no knowledge that Towne was acting merely as agent of Simpson, Simpson was in fact "the real party in interest," and could maintain an action for any loss sustained by him under the contract.

It is well settled in this state, that where a contract is made by an agent for the benefit of his principal, the principal may sue on the contract; and this is so, even where the contract is made in the name of the agent and the principal's

name is not disclosed. (*Railway Co. v. Thacher*, 13 Kas. 566; Pomeroy on Remedies and Remedial Rights, 170.) The trial court instructed the jury substantially, that if the horse was injured by the negligence of the railroad company, the owner was not limited in his recovery by the words, "Value not to exceed $100," expressed in the contract. To this direction the plaintiff in error excepted, and alleges that the contract was supported by a good consideration, which to the carrier consisted in the diminution of risk assumed by him, and to the shipper in the reduced rate at which the service was to be performed in consequence of the risk assumed by himself as to the measure of damage in case of loss or injury. Several of the decisions cited sustain this proposition, but we are not disposed to follow their lead. It was stated in *Kallman v. Express Co.*, 3 Kas. 205, that it is only when carriers act in good faith and use due care and diligence in and about their business, that the law permits them to have the benefit of limitations restricting the measure of damages in case of loss of property intrusted to them. In the late case of *Railroad Co. v. Lockwood*, 17 Wall. 357, the supreme court of the United States, after the most exhaustive examination of American and English authorities, laid down the principle that a common carrier, whether of goods or passengers, cannot stipulate for exemption from responsibility for the negligence of himself or his servants. In support of this principle, the learned justice delivering the opinion said:

"If the customer had any real freedom of choice; if he had a reasonable and practicable alternative, and if the employment of a carrier were not a public one, charging him with the duty of accommodating the public in the line of his employment, then, if the customer chose to assume the risk of negligence, it could with more reason be said to be his private affair and no concern of the public; but the condition of things is entirely different, and especially so under the modified arrangements which the carrying trade has assumed. The business is mostly concentrated in a few powerful corporations whose position in the body politic enables them to control it. They do in fact control it, and make such conditions on the travel and transportation as they see fit, which

the public is compelled to accept. These circumstances furnish an additional argument, if any were needed, to show that the conditions imposed by the common carrier ought not to be adverse, to say the least, to the dictates of public policy and morality. The statute and relative position of the parties render any such conditions void. . . . Conceding, therefore, that special contracts made by common carriers with their customers, limiting their liability, are good and valid so far as they are just and reasonable, to the extent for example, of excusing them for all loss happening by accident without any negligence or fraud on their part; when they ask to go still further and to be excused for negligence — an excuse so repugnant to the law of their foundation and to the public good — they have no longer any plea of justice or reason to support such stipulation, but the contrary."

In Missouri, where the bill of lading or contract was signed, the law is, that while a common carrier may limit his liability by contract, he cannot exempt himself from that responsibility which every bailee assumes for ordinary care and common honesty. (Lawson on Carriers, § 50.)

In *Levering v. Union Transportation &c. Co.*, 42 Mo. 88, it is said:

"The argument in favor of the right of the carrier to vary his liability by introducing conditions into his acceptance, is founded on a misconception in considering that his liability is voluntary, and arises *ex contractu*. The law attaches the responsibility to his employment or calling, and if he assumes that calling he has no power over the duties which the law annexes to his calling. His assuming the character of a common carrier depends entirely on his own will or assent; but if he undertakes that occupation, the liabilities which come upon him in respect to goods brought or borne to him to be carried, are imposed by law, and not created by assent or agreement."

James, J., used the following language in an unreported case of the supreme court of the District of Columbia:

"The principle of law which for considerations of public welfare forbids a common carrier to bargain in particular cases for complete exemption from responsibility for a violation of his duties, forbids him to impair his obligations to the community by bargaining in particular cases for an exemption

from a considerable part of that responsibility. The ground on which the rule is based, that even the shipper's perfect consent cannot relieve the carrier, is that the object which he undertakes to regulate by contract is not his own, but a public right. . . . The principle of the rule is, that any agreement which operates to interfere with a public right, touching the character and good faith of common carriers, is an agreement against public policy and welfare, and is therefore void; and as an agreement that his negligence shall be cheap must operate in this way, it necessarily falls within that principle."

(*Galt v. Express Co.*, S. C. D. C. MSS.; Lawson on Carriers, 434, 435. See also *Goggin v. Rly. Co.*, 12 Kas. 416; *Rld. Co. v. Caldwell*, 8 id. 244; *Rly. Co. v. Regnolds*, 8 id. 623; *Kallman v. Express Co.*, supra; *Rly. Co. v. Nichols*, 9 id. 235; *Rly. Co. v. Piper*, 13 id. 505; *Rld. Co. v. Maris*, 16 id. 333; *The "Emily" v. Carney*, 5 id. 645; *Rly. Co. v. Peavey*, 29 id. 169.)

While the provision in a bill of lading or contract between the shipper and carrier, that the latter will not be liable beyond a certain sum expressed in the contract, may be valid to limit the liability of the carrier as an insurer, a condition of this character which seeks to cover the negligence of the carrier is void; therefore, the direction of the trial court was not erroneous.

The present case furnishes a strong illustration of the oppression and injustice of a contrary doctrine. Simpson, the owner of the horse, sent his rider, Towne, a boy, to ship the horse to St. Joseph, Missouri, and enter him in the races there. He did not authorize him to fix any limitation on the value, in transporting him, and the horse was worth more than $300. The agent of the company shipping the animal supposed the horse was fancy stock, or a race horse, and without any inquiry as to its actual value, arbitrarily inserted in the bill of lading, "Value not to exceed $100." Towne told the agent that he did not want the contract limited, but afterward signed it with the clause inserted. Acccording to the testimony of the agent, the rules of the

company required him to insert this clause in transporting fine stock, whether the shipper wanted it or not. At St. Joseph, the car containing the horse was run up in the yard of the company, a flying switch made, and the car run about two hundred yards without any brakeman or other person on the car to stop or control it, at such a speed that the horse was knocked down upon his knees and injured.

The other questions submitted have been fully examined, but we do not think it necessary to comment thereon, as it is clearly shown from the evidence that the agent knew that the horse was going to the fair at St. Joseph, and considered it more valuable than ordinary stock at the time of giving the bill of lading.

The judgment of the district court must be affirmed.

All the Justices concurring.