THE PACIFIC EXPRESS COMPANY v. PETER T. FOLEY.

1. CARRIER OF GOODS—*Limiting Liability.* Where the receipt or contract of a common carrier contains a stipulation that the company is not to be held liable for any loss or damage, except as forwarders only, nor for any loss or damage of any box, package or thing for over $50, unless the just and true value thereof is stated in such receipt, and where the receipt fails to show any value of the box or goods shipped, the receipt or contract, if fairly and voluntarily entered into, will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight it receives when the loss or injury to the box or goods carried results only from slight, common or ordinary negligence on the part of the carrier, its agents or servants.

2. ——— The case of *Kallman v. Express Co.*, 3 Kas. 205, referred to and commented on.

3. CASE, *Distinguished.* The case of *K. C. St. J. & C. B. Rld. Co. v. Simpson*, 30 Kas. 645, distinguished, as the carrier in that case arbitrarily and unfairly mixed in the bill of lading or receipt a limitation on the value of the property shipped.

### *Error from Douglas District Court.*

ON the 4th day of November, 1887, *Peter T. Foley* brought his action against the *Pacific Express Company* before a justice of the peace of Douglas county to recover $175, for damages alleged to have been sustained by him in the transportation of a box containing type and electrotype plates from Kansas City, Mo., to Lawrence, in this state, on October 15, 1887, from the A. N. Kellogg Newspaper Company, at Kansas City, Mo., by the Pacific Express Company. The following is a copy of the receipt given by the express company for the box in controversy:

"Read this receipt.　　　　　　THE PACIFIC EXPRESS COMPANY.
"Not negotiable.

"RECEIVED FROM..................................................the following articles, which we undertake to forward to the point nearest to destination reached by this company only, perils of navigation excepted. And it is hereby expressly agreed, that the said Pacific Express Company is not to be held liable for any loss or damage, except as forwarders only; nor for any loss or damage of any box, package or thing for over $50, unless the just and true value thereof is herein stated; nor for any loss or damage by fire, the acts of God, or of the enemies of the government, the restraint of governments, mobs, riots, insurrections, or pirates, or from any of the dangers incident to a time of war; nor upon any property or thing, unless properly packed and secured for transportation; nor for any fragile fabrics, unless so marked upon the package containing the same; nor upon any fabrics consisting of or contained in glass. If any sum of money, besides the charge for transportation, is to be collected from consignee, on delivery of the property described herein, and the same is not paid within 30 days from date hereof, the shipper agrees that this company may return said property to him, at their option, at the expiration of that time, subject to the conditions of this receipt, and that he will pay the charges for transportation both ways, and that the liability of this company for such property, while in its possession for the purpose of making such collection, shall be that of warehousemen only. And it is further agreed, that the said Pacific Express Company shall not be held liable for any claim, of whatsoever nature, arising from this contract, unless such claim shall be presented in writing 60 days from date hereof, in a statement to which this receipt shall be annexed; and the shipper and owner hereby severally agree, that all the stipulations and conditions in this receipt contained shall extend to and inure to the benefit of each and every company, or person, to whom the Pacific Express Company may intrust or deliver the

above-described property for transportation (which the said Pacific Express Company is hereby authorized to do), and shall define and limit the liability therefor of such other company or person."

| DATE, 1887. | ARTICLES. | VALUE. | CONSIGNEE. | DESTINATION. | RECEIPT BY. |
|---|---|---|---|---|---|
| *Oct. 15.* | *1 box.* | | *P. T. Foley.* | *Lawrence, Kansas.* | *Glass.* |

On the first page of the receipt-book, after the printed words "Received from," there was written "A. N. Kellogg N'paper Co," and on the following pages nothing was written in the blank after the words "Received from." Before the commencement of this action, J. K. Johnson, superintendent of the Pacific Express Company, tendered to Foley for that company $50 in payment for the damage to the box, but Foley refused to accept that amount. Trial had before the justice of the peace on November 8, 1887, and the plaintiff recovered judgment for $144.55 and interest and costs. The action was appealed to the district court. Trial had before the court with a jury, at the February term, 1888. The jury returned a general verdict for the plaintiff for $144.55, with interest, and also made special findings. Subsequently judgment was rendered upon the general verdict. The defendant excepted, and brings the case here.

*A. L. Williams,* and *Chas. Monroe,* for plaintiff in error.

*John Hutchings,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The principal question in this case is, what effect is to be given to the following language of the receipt executed by the express company:

"It is hereby expressly agreed that the said Pacific Express Company is not to be held liable for any loss or damage, except as forwarders only; nor for any loss or damage of any box, package or thing for over $50, unless the just and true value thereof is herein stated."

It appears that the type and electrotype plates were shipped from Kansas City to Lawrence by the A. N. Kellogg News-

paper Company, which in making the shipment acted for
Peter T. Foley. It also appears that the newspaper com-
pany had a receipt-book, furnished by the express company,
and in the heading to each page were printed conditions, and
among others, the one quoted. The newspaper company,
having this book in its possession and control, and using it
from day to day, must be presumed to have known of its
conditions, and to have shipped with reference to it. In this
the company acted for the plaintiff, and he must be presumed
to have assented to the terms and conditions of the receipt.
The jury made the following special findings in answer to
questions submitted to them:

"Ques. Was not the box containing the type and electro-
types in controversy broken while it was still in the car in
which it was brought from Kansas City? Ans. It was found
broken in the car.

"Q. If you should find that said box was broken open by
any negligence of the company, state what act or thing caused
said box to be broken. A. We do not know.

"Q. Do the jury know where on the journey the box was
broken open? If so, state where. A. We do not know.

"Q. Were not the agents of defendant negligent in taking
the box out of the car? A. Yes.

"Q. Could they not have saved the contents of the box by
handling the box carefully when it was taken out of the car?
A. Yes, to the best of our knowledge and belief."

The district court, among other things, instructed the jury
that —

"While a common carrier is generally, in the absence of
any such limitation, liable absolutely as an insurer against all
loss except that caused by the act of God and the public
enemy, it may limit such liability by special conditions such
as contained in this receipt, but such special contract cannot
relieve the company from its own negligence. It follows that
in this case the company is liable, if at all, not as an insurer,
but solely for negligence in the transportation of the property.
Negligence is a negative term, implying the want or absence
of ordinary care — that is, that care and caution that men of
ordinary prudence usually exercise under like circumstances.
Whether the defendant company was so negligent, and, if so,

whether such negligence caused the injuries complained of, are questions of fact for the jury, to be determined from all the evidence. You should consider the condition of the material when delivered to them, the manner in which it was boxed, the nature of the articles so far as they could be seen and known by the shipper, the manner in which such property is handled, the condition and circumstances in which it was found at the place of destination, and taking into consideration all the surrounding circumstances and facts proven, and using that ordinary knowledge, observation and experience in life that men generally possess, you must say whether the loss and injury were attributable to the want of ordinary care and diligence on the part of the express company. If they were, the plaintiff may recover his actual loss; otherwise, he cannot recover beyond the sum of $50."

The express company asked the court to instruct the jury as follows:

"1. The jury are instructed to return a verdict in favor of the plaintiff for the sum of $50.

"2. The agreement in the receipt that defendant will not be liable for more than $50 for any shipment, unless the true value of such shipment is stated in the receipt, is a valid agreement and relieves the defendant of liability as insurer for all amounts over $50, leaving it liable in excess of $50 only for gross negligence, and the burden of proving gross negligence is upon the plaintiff."

I. It is settled by the decisions of this court, and by the great weight of authority, that a common carrier cannot stipulate for exemption from responsibility for the negligence of himself or his servants on grounds of public policy even by express contract. (*K. C. St. J. & C. B. Rld. Co. v. Simpson,* 30 Kas. 645; *Railroad Co. v. Lockwood,* 17 Wall. 357, and the cases therein cited; 2 Am. & Eng. Encyc. of Law, 822.) But this is not the question presented by the record in this case. The receipt executed by the express company, and knowingly and voluntarily accepted by the shipper through his agent, expressly provided "that the express company was not to be liable for any loss or damage to the box for over $50, if the just and true value thereof was not stated." The true and just value of the box was not stated in the receipt

or to the company by the shipper. The trial court very properly instructed the jury, "that the shipper must be presumed to have assented to the terms and conditions of the receipt." Two questions are therefore presented for our determination: *First.* May a common carrier limit his liability to an amount stated in a written receipt or special contract in the event of loss or injury to the goods or property through ordinary negligence, if such special contract is freely, voluntarily and fairly entered into by the parties, and such contract is just and reasonable in its terms? *Second.* Did the written receipt or special contract between the shipper and express company in this case limit the liability of the company for loss or injury to the amount of $50?

The better authorities declare the law to be, that the value of the property transported may be agreed upon, and the

1. Carrier of goods may limit liability for damage or loss.

damage or loss to the property occasioned by the negligence of the company or its servants will be limited to the agreed valuation. The *Hart Case,* 112 U. S. 331, may now be called the leading case in America. Mr. Justice Blatchford, delivering the opinion of the court in that case, said, among other things, that—

"It is the law of this court, that a common carrier may by special contract limit his common-law liability, but that he cannot stipulate for exemption from the consequences of his own negligence or that of his servants. . . . There is no justice in allowing the shipper to be paid a large value for an article which he has induced the carrier to take at a low rate of freight, on the assertion and agreement that its value is a less sum than that claimed after a loss. It is just to hold the shipper to his agreement, fairly made, as to value, even where the loss or injury has occurred through the negligence of the carrier. . . . The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based upon that value. The shipper is estopped from saying that the value is greater. The articles have no greater value, for the purpose of the contract of transporta-

tion, between the parties to that contract. The carrier must respond for negligence up to that value. It is just and reasonable that such a contract, fairly entered into, and where there is no deceit practised on the shipper, should be upheld. There is no violation of public policy. On the contrary, it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair-dealing and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss."

See, also, *Harvey v. Railroad Co.*, 74 Mo. 539; *Brehme v. Dinsmore*, 25 Md. 329; *Railroad Co. v. Sherrod*, 84 Ala. 178; *Duntley v. B. & M. Rld. Co.* (N. H. 1890), 9 Lawyers' Rep. 449; *Magnin v. Dinsmore*, 62 N. Y. 35; 20 Am. Rep. 442; *Squire v. N. Y. C. Rld. Co.*, 98 Mass. 239–245; *Graves v. L. S. & M. S. Rld. Co.*, 137 id. 33; *Hill v. B. H. T. & W. Rld. Co.*, 144 id. 284; *Falkenau v. Fargo*, 3 Jones & S. 332; 55 N. Y. 642; *Ghormley v. Dinsmore*, 21 Jones & S. 36; *Westcott v. Fargo*, 6 Lans. 328; *Grace v. Adams*, 100 Mass. 505; *Pemberton Co. v. N. Y. C. Rld. Co.*, 104 id. 144.

See, also, *Breese v. U. S. Telegraph Co.*, 48 N. Y. 132, 139, 141, 142; 23 Am. & Eng. Rld. Cases, 703; 42 id. 366 (Va. 1879).

II. As to the second question proposed, we think that the limitation in the written receipt or special contract not to be liable for any loss or damage over $50, in this case, stands as if the carrier had asked the value of the box and its contents, and had been told by the shipper "that the value was $50 only," or, which is the same thing, had been told by the shipper "that if loss or damage occurred to the box or its contents, he would not demand over $50." In *Kallman v. Express Co.*, 3 Kas. 205, it was said that—

"No value was given in the bill of lading which was delivered to the shipper by the express company, and received by him without objection, thus consenting and agreeing that the plaintiffs should be bound by its terms. If he had desired to make the company responsible for the full value of the goods, he had only to furnish them with the amount and have it inserted in the bill. But it may be said that the company were

bound to make inquiry as to the value of the goods if they desired to obtain the benefit of this limitation upon their liability. We confess that we are not able to see any good reason for making such a requirement a condition precedent in such case. The company exhibits to the employer the exact condition upon which they will receive his property for carriage, to which he may assent or not, as he may choose. If he assent, we think he should be bound thereby. As in this case, if the real value of the property was $592.53, the employer, in case of loss, would be as much, nay more, interested in having such value truly stated in the bill of lading or receipt as the company could possibly be in having the value understated. He ought, then, to have made known to the company the true value of the goods, and more especially, as the limitation upon the liability of the company was so plainly stated in the receipt."

We do not quote this part of the opinion in the above case because it is necessarily conclusive or binding as a prior decision of this court, as, in that case, the trial court granted a new trial. This court affirmed the action of the court below.

2. Case commented on. Much said in the former opinion, outside of affirming the action of the court in granting a new trial, we consider *obiter dictum*. The trial court in that case, in granting the new trial, did not pass upon a pure, simple and unmixed question of law. This court has decided time and again that—

"The granting of a new trial is largely in the discretion of the trial court; and where a new trial is given, and the record does not show upon what grounds the court granted such new trial, but the record does show errors upon which the trial court might have granted a new trial, the order granting such trial will not be disturbed." (*Barney v. Dudley*, 40 Kas. 247; *Howell v. Pugh*, 25 id. 96; *City of Sedan v. Church*, 29 id. 190.)

See *Betz v. Land Co.*, ante, p. 45.

"It is a maxim not to be disregarded, that general expressions in every opinion are not to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious." (*Cohens v. Virginia*, 6 Wheat. 264–399, 400.)

But we have referred to that part of the Kallman opinion, because the court below charged the jury "that the Kellogg Newspaper Company, having this receipt-book in its possession and control, and using it from day to day, must be presumed to have known of such conditions, and to have shipped with reference to it. In this it acted for the plaintiff, and he must be presumed to have assented to the terms and conditions of the receipt;" and because this part of the charge of the trial court and the part of the opinion quoted from the Kallman case are in accordance with reason, fairness, and justice. This part of the opinion also answers the objection "that the value of the property transported was not agreed upon."

As is forcibly argued by counsel —

"The express company took the property and signed a receipt presented to it by plaintiff's agent. It is true that it was one of a book of receipts furnished by the express company, but the receipts were all in blank, the printed part containing all the regulations that the express company required the shipper to comply with. The blanks were all left for the shipper to fill in any way he pleased; and in whatever way he filled the blanks, the express company was bound to receipt for the property covered by the receipt. When the shipper had filled the blank and presented it to the express company for its signature, he was in the attitude of proposing an agreement to the express company for acceptance. The signature of the express company was the completion of the agreement, and the agreement as completed, so far as it related to the value of the property, was not a limitation of liability for negligence in any way, but a square agreement that the property presented for carriage, and covered by the receipt, was worth only $50."

In *Oppenheimer v. Express Co.*, 69 Ill. 62, the facts were about as follows: May & Stern shipped by the United States Express Company a box weighing 25 pounds, from New York city to Oppenheimer & Company, at Chicago, Ill. It contained jewelry of the value of $3,800. The receipt given by the express company was similar in that case to the receipt given by the Pacific Express Company in this case. The

30 — 46 KAS.

blank for the value of the box and contents was not filled in. But the limitation of $50 was in the receipt in that case, as in this. The box and its contents were destroyed by fire in the office of the express company at Chicago. Oppenheimer & Co. brought an action to recover for the value of the contents of the box. Judgment was rendered in their favor for $50 only. They appealed. The judgment of the lower court was affirmed by the supreme court of Illinois. In rendering its opinion, that court said:

"The terms and conditions on which the company received the property for transportation were clearly expressed in the body of the receipt, and in a way not calculated to escape attention. It must be supposed that these men paid some attention to the transaction of their business, and were reasonably well informed in regard to the nature of their contracts. That they should have been so doing business with this company for years, handling, filling out and procuring the execution of these shipping receipts, without a knowledge of their general character and effect, it is difficult to believe. They must be held to have had such knowledge. . . . A distinction exists between the effect of those notices by a carrier which seek to discharge him from duties which the law has annexed to his employment, and those, like the one in question, designed simply to insure good faith and fair dealing on the part of his employer—in the former case, notice alone not being effectual without an assent to the attempted restriction; while in the latter case notice alone, if brought home to the knowledge of the owner of the property delivered for carriage, will be sufficient."

A part of the syllabus of that case reads:

"An express company has the right to demand from a consignor such information as will enable it to decide on the proper compensation to charge for the risk, and the degree of care to bestow in discharging its trust; and a limitation of its liability not to exceed $50, unless the value of the goods forwarded is truly stated, if brought to the knowledge of the consignor, is reasonable and consistent with public policy."

The court finally disposed of the above case upon the ground that there was a "designed suppression of the value of the

goods." It was said in the opinion, among other things, that—

"There was an actual attempt here by the agent of the shippers to fill in this blank space, but instead of inserting $3,800 (the value), a mark or character was inserted inexpressive of any value. This shows that there was a designed suppression of the value of the goods. That was unfair conduct on the part of the shipper of the goods. The effect of such conduct to relieve the carrier from his liability as insurer, is asserted in many cases [here decisions are given]. Had the true value of the goods been disclosed, there would have been an extra charge of $9.50, increased precautions would have been taken for the safety of the goods, and, as the evidence shows, they would have been saved."

It may be said in every case that where a shipper fixes an agreed valuation upon his goods to be transported, or enters into a special contract with the carrier that if his goods are lost or injured he will not demand over $50, and thereby obtains cheaper rates, that he is guilty of fraud, or attempted fraud, if his goods are lost or injured and he demands for his damages an amount above the valuation or limitation agreed to. If it be true, as the trial court charged the jury, that "the plaintiff must be presumed, under the facts of this case, to have assented to the terms and conditions of the receipt," then, within the better authorities, the limitation of the carrier's liability not to exceed $50 was the same as fixing the value of the property transported at $50 only, and the limitation of the express company's liability not to exceed the $50 stated in the receipt was reasonable and just. *Boorman v. Express Co.*, 21 Wis. 152, is a case like this. A limitation of $50 was contained in the receipt. Chief Justice Dixon, writing the opinion, held that—

"An express company may exempt itself by special contract from liability as insurer; or for the default or negligence of any person to whom the property may be delivered by it for the performance of any act or duty in respect thereto, off its own routes; or for loss or damage of any package for over $50, unless the just and true value thereof is stated in the receipt."

In *Duntley v. B. & M. Rld. Co.*, supra, it was decided that—

"A regulation of a carrier with respect to the transportation of live animals, which fixes the ordinary value of horses for which it will hold itself responsible in case of loss at $200 each, and requires extra compensation for transporting animals of greater value, is reasonable and valid."

In *Durgin v. Express Co.*, 9 Lawyer's Rep. 453, (N. H. 1890,) the receipt was like the one in this case, and limited the liability to $50. It was held that—

"A shipper of goods who fills out one of the blank receipts contained in a book previously furnished by an express company for his use, and obtains the signature of the company's agent thereto upon delivering to him a package for transportation, will be presumed to know the contents of the receipt; and if he receives such receipt without objection, his assent as to its conditions will, in the absence of fraud, be conclusively presumed."

Clark, J., in delivering the opinion in that case, said:

"The receipt signed by the defendants' agent and servant at the time of the delivery of the package was taken by the plaintiff as evidence of the fact and purpose of its delivery, and of the terms and conditions on which the defendants received it. The receipt was contained in a book of blank receipts previously furnished by the defendants for the use of the plaintiff, and the written portions were in his handwriting, and the law presumes that the contents were known to him. The plaintiff understood it to be the shipping contract, and, in the absence of fraud, by receiving it without objection he was conclusively presumed to assent to its conditions. (*Merrill v. Express Co.*, 62 N. H. 514; *Grace v. Adams*, 100 Mass. 505.) It is now generally held that the responsibility imposed on the carrier of goods by the common law may be restricted and qualified by express stipulation, where such stipulation is just and reasonable; and a stipulation that the carrier shall be informed as to the value of the goods delivered to him for carriage, as affecting the risk and the degree of care required, is clearly reasonable. . . . The plaintiff understood that he was securing transportation of the box to New York at a reduced rate, (in fact, at one-fifth of the regular rate,) by calling the value $50, and assuming a portion of the risk of carriage himself; and having agreed upon a valuation for the purpose

of fixing the express charges, he cannot insist that the goods are of greater value for the purpose of increasing his claim for damages for the loss. Nor is it material whether the loss arose from the negligence of the defendants, or some other cause. The defendants agreed to respond in a sum not exceeding $50 in case of loss; and, for the purpose of the contract of transportation between the parties to the contract, the goods had no greater value."

See also to the same effect *Squires v. Railroad Co.*, 98 Mass. 239; *Railroad Co. v. Hanlien*, 52 Ala. 615; *Magnin v. Dinsmore*, 56 N. Y. 168; *Railroad Co. v. Weakly*, 50 Ark. 397; 8 S. W. Rep. 134.

In *L. & N. Rld. Co. v. Wynn*, (Sup. Ct. Tenn., January 2, 1890,) 14 S. W. Rep. 311, special contracts for a limitation of the liability of a carrier are not sustained. It is said in that case, among other things, that —

"To our minds, it is perfectly clear that the two kinds of stipulation — that providing for total, and that providing for partial, exemption from liability for the consequences of the carrier's negligence — stand upon the same ground, and must be tested by the same principles. If one can be enforced, the other can; if either be invalid, both must be held to be so, the same considerations of public policy operating in each case."

In our opinion, the reasons stated are wholly untenable. They proceed upon false premises. That court overlooks the power of the shipper to freely and fairly fix a valuation upon his own property. The carrier has the right to make reasonable rates for carriage. A total exemption from the liability on the part of a carrier would not be just or reasonable, and no person having reason would willingly and freely contract with a carrier that the property which he wished to have transported was absolutely worthless. The carrier is bound to receive and transport the property of the shipper. The shipper can place his own valuation upon the property delivered by him to the carrier to be transported. The carrier cannot arbitrarily fix any valuation on the property received from the shipper, but may reasonably insist on proper information as to the value of the property which he receives. He ought to

have a right to know what it is that he undertakes to carry, and the amount and extent of his risk. Upon the value of the property, the risk incurred, and the distance the property is to be transported, the charges for carriage are fixed. Therefore it would seem to us that a contract fixing the value of the goods delivered to the carrier, or fixing a limitation of damage in case of loss or injury, is clearly reasonable as affecting the risk and the degree of care required concerning the property to be transported. With the above and foregoing limitations, we cannot conceive how the carrier can evade his duty or nullify the law. Upon the authorities cited, the instructions of the trial court were erroneous, and the instruction prayed for by the express company for limitation as to damages should have been given.

There is nothing appearing in the evidence or the findings of the jury that shows, or tends to show, gross negligence, fraud, or intentional wrong upon the part of the express company. In the case of *Railroad Co. v. Simpson*, 3. Case distinguished. 30 Kas. 645, the limitation was arbitrarily fixed by the carrier without the consent of the shipper. That contract was not just or reasonable, or freely or fairly entered into. It was in violation of public policy. It is unlike this case, because, when the box in controversy was shipped, the shipping clerk of the Kellogg Newspaper Company filled out a receipt, and a man by the name of Glass, a driver for the Pacific Express Company, signed it. No deceit or unfairness was practiced by the express company.

In the case of the *Telegraph Co. v. Crall*, 38 Kas. 679, gross negligence was involved. Whether a telegraph company could exempt itself by contract from ordinary negligence, was not passed upon. That question was reserved. We do not think it is necessary to follow all that was stated in *Kallman v. Express Co.*, supra; because, although that decision was made nearly 25 years ago, the question now at issue was not necessarily embraced in that decision, for the reasons heretofore named. The case of *Railroad Company v. Simpson*, supra, followed *Railroad Co. v. Lockwood*, 17 Wall. 357. This case

is referred to and clearly distinguished in the later case of *Hart v. Pa. Rld. Co.*, supra. Again, the box containing the type and plates was shipped from Kansas City, Mo. The receipt executed by the express company was executed and delivered at Kansas City, Mo., to the Kellogg Newspaper Company for P. T. Foley, the plaintiff below. In that state the law declared by the supreme court is, that—

"A contract fairly entered into between carrier and shipper, specifying a fixed sum as the value of the property, and limiting the recovery in case of loss to that sum, is binding on the shipper." (*Harvey v. Railroad Co.*, 74 Mo. 538.)

We must assume, so far as this case is concerned, that the parties, including the shipper and the express company, contracted with reference to the law of Missouri. The receipt was signed there, the box was delivered there, and was shipped from Missouri to Kansas. It seems to us that the shipper ought not to complain. If he had desired to insert, in the receipt which the express company was asked to sign, $144.55 as the full value of the box, or if he had desired to insert any larger amount, he had the option so to do; and if he had inserted the full value of the box and its contents, he could have recovered the value. But as the shipper voluntarily limited his loss or damage to the sum of $50 only, why should he refuse to receive the sum of $50, which was tendered him by the superintendent of the express company when he presented his claim for damages? The receipt, as executed, was just as he desired and wished it. The damage in case of loss or injury to the box or its contents was liquidated in advance by the voluntary action of the parties. "The limitation as to the damages or value has no tendency, in such a case as this, to exempt from liability for negligence." (*Hart v. Railroad Co.*, supra.) Generally, the charges for transporting a box or package valued at $144.50, $500, or $1,000, are more than when the value is $50 only, and if the shipper wishes to pay full charges and recover full value, in case of loss or injury from negligence, why should he not state to the carrier, or write in the receipt to be signed by the carrier, the full value?

We now repeat what was said upon this point in *Kallman v. Express Co.*, 3 Kas. 205, where the receipt was left blank as to the value, as in this case, but where a limitation was inserted in the receipt in case of loss or damage:

"'The company exhibits to the employer the exact conditions upon which it will receive his property for carriage, to which he may assent or not as he may choose. If he assents, we think he should be bound thereby. As in this case, if the real value of the property was $592.53, the employer, in case of loss, would be as much, nay more, interested in having such value truly stated in the bill of lading or receipt as the company could possibly be in having the value understated. He ought then to have made known to the company the true value of the goods, and more especially as the limitation upon the liability of the company was so plainly stated in the receipt."

The judgment of the district court will be reversed, and the cause remanded for a new trial.

JOHNSTON, J., concurring.


VALENTINE, J.: I think we should follow the decision made in the case of *Kallman v. Express Co.*, 3 Kas. 205 — first, because it is right; and second, for the following reasons: It was made on February 17, 1865, more than 26 years ago; the courts have been open ever since, and 20 or more sessions of the legislature have intervened, and yet no modification of any of the rules therein enunciated has been made, but all seem to have been acquiesced in; and for these reasons it must be presumed that the parties to this action, and especially the express company, contracted with reference to such rules; and now, to overturn them, and to declare different rules for this case, would virtually be to make a new contract for the parties; and construing the present contract as the contract in that case was construed would render the contract valid, while to construe it as the express company now desires to have it construed would render it void. To construe the contract so as to limit the express company's common-law liability only as an insurer, and only for losses and injuries brought about by

other causes than the company's own negligence, fraud or will-
ful wrongs, would render the contract valid; while if it be con-
strued in such a manner as to reach to the domain of negligence,
fraud and willful wrongs on the part of the express company
itself, and to limit the company's liability so that the company
would not be liable for losses occasioned by its own negligence,
fraud or willful wrongs, would render the contract to that ex-
tent invalid and worthless.   It must be remembered that in
this case the *value* of the property transported was not agreed
upon.    Whether it was worth 1 cent, $1, $100, $1,000, or
any other sum, greater or less, is left wholly blank.    There
seems to have been no thought of fixing by contract or other-
wise the actual value of the property, or any value, but it
was actually worth $144.55.   In this failure to fix the value
of the property by contract, this case differs essentially from
the case of *Hart v. Pa. Rld. Co.*, 112 U. S. 332.   There are
other distinctions between the present case and those relied on
by the express company.   For instance, the shippers them-
selves in some of the cases relied on by the express company
were guilty of fraud or unfair dealing, as in the case of *Op-
penheimer v. Express Co.*, 69 Ill. 62, 63.   In that case the
shippers delivered to the express company for transportation
a certain box containing watches and jewelry of the value of
$3,800, without disclosing its contents or their great value,
and paid only $1.40 for its transportation; while, if they had
disclosed its contents and their value, they would have had to
pay $10.90 for its transportation.   The receipt which they took
from the express company did not state the contents or the
value of the goods, but stated, "Contents unknown."   The
court in commenting upon these matters used the following
among other language:

"There was an actual attempt here by the agent of the ship-
pers to fill in this blank space, but instead of inserting '3,800'
(the value), a mark or character was inserted inexpressive of
any value.   *This shows that there was a designed suppression
of the value of the goods.   That was unfair conduct on the part
of the shippers of the goods.*   The effect of such conduct to re-

lieve the carrier from his liability as insurer is asserted in the cases of—[here certain cases are given]. Had the true value of the goods been disclosed, there would have been an extra charge of $9.50, increased precautions would have been taken for the safety of the goods, and, as the evidence shows, they would have been saved."

In this case of *Oppenheimer v. Express Co.*, no pretense of fault or negligence on the part of the express company was imputed, but, on the contrary, it was admitted by the parties that the company was not guilty of any fault or negligence; and in the later case of *C. & N. W. Rld. Co. v. Chapman*, (decided by the supreme court of Illinois, on May 14, 1890,) 42 Am. & Eng. Rld. Cases, 392, 394; same case, 24 N. E. Rep. 417, 419, it is stated as follows: "In *Oppenheimer v. Express Co.*, 69 Ill. 62, the court held that the contract exempting carriers from liabilities is not to be construed as providing against loss or injury occasioned by actual negligence on their part." Indeed, the case of *Oppenheimer v. Express Co.* has no application to this present case. In the present case the shipper was not guilty of fraud or unfair dealing, and the express company was unquestionably guilty of culpable negligence.

In the case of *Orange Co. Bank v. Brown*, 9 Wend. 85, 114, *et seq.*, an intended passenger on a steamboat, without paying extra fare, took with him on the steamboat as baggage an ordinary traveling trunk containing $11,250. In a few minutes afterward the trunk and its contents were removed, and the owner never recovered them. The owners of the steamboat had no knowledge of the contents of the trunk, nor of their great value, and it was held that they were not liable for their loss. Other distinctions might be shown between this case and the cases relied on by the express company, if it were thought necessary. The stipulation contained in the receipt given by the express company in the present case, limiting its liability for loss or damage, does not limit its liability except with respect to an amount in excess of $50. Up to that amount the express company's liability remains precisely the same as it would be at common law, or as it would be if

no contract limiting its liability had ever been made.   But, for
the excess above $50, the express company claims that it has
obtained a boundless immunity from liability; that it has not
only obtained an absolute exemption from all liability for all
loss or damage above that amount where the loss or damage
has occurred without fault or negligence on its part, but that it
has also obtained such an exemption where the loss or damage
has been occasioned by its own negligence, or by its own fraud
or willful wrongs, including the willful destruction of the prop-
erty, or the greater wrong of feloniously stealing it.   This
cannot be correct.   The stipulation in such receipt ought to
be so construed as to exempt the company from liability for
only such loss or damage in excess of $50 as might be occa-
sioned by the fault or negligence of others, or as might result
from some accident, casualty or misfortune over which the
company could have no control.   I think the weight of au-
thority sustains this view.   While a common carrier may
make a valid contract exempting himself from his common-
law liability as an insurer and for losses occasioned by the acts
of others without his fault, or occasioned by such of his own
acts only as do not involve any kind of wrong, or occasioned
by circumstances over which he has no control, yet he cannot
make a valid contract exempting himself from liability for
losses occasioned by his own carelessness or negligence or im-
proper acts.   Such a contract would be against public policy,
and void.   I think the contract in the present case should be
construed precisely as though it did not attempt to limit the
express company's liability at all for losses occasioned by its
own negligence or improper conduct, and I would refer to
the following authorities in support of this view:

*Kallman v. Express Co.,* 3 Kas. 205; *K. C. St. J. & C. B.
Rld. Co. v. Simpson,* 30 id. 645; *K. P. Rly. Co. v. Peavey* 29
id. 169; *Telegraph Co. v. Crall,* 38 id. 679; *Farnham v. C. &
A. Rld. Co.,* 55 Pa. St. 53; *Express Co. v. Sands,* 55 id. 140;
*Grogan v. Express Co.,* 114 id. 523; same case, 60 Am. Rep. 360;
same case, 30 Am. & Eng. Rld. Cases, 9; *Wyler v. Pa. Rld.
Co.,* 134 Pa. St. 310; same case, 42 Am. & Eng. Rld. Cases,

390; *Express Co. v. Moon*, 39 Miss. 822; *C. &c. Rld. Co.*, *v. Abels*, 60 id. 1017; *Express Co. v. Seide*, 67 id. 609; same case, 42 Am. & Eng. Rld. Cases, 398; *Kirby v. Express Co.*, 2 Mo. App. 370; *McFadden v. Mo. Pac. Rly. Co.*, 92 Mo. 343; same case, 30 Am. & Eng. Rld. Cases, 17; *Moulton v. St. P. M. & M. Rly. Co.*, 31 Minn. 85; same case, 12 Am. & Eng. Rld. Cases, 13; *The City of Norwich*, 4 Ben. 271; *Railroad Co. v. Lockwood*, 17 Wall. 357; *Liverpool Steam Co. v. Phenix Ins. Co.*, 129 U. S. 397; same case, 37 Am. & Eng. Rld. Cases, 681; *Rosenfeld v. P. D. & E. Rly. Co.*, 103 Ind. 121; *Express Co. v. Harris*, 120 id. 73; same case 40 Am. & Eng. Rld. Cases, 151; *Mo. Pac. Rly. Co. v. Harris*, 67 Tex. 166; *S. Pac. Rly. Co. v. Maddox*, 75 id. 300; same case, 42 Am. & Eng. Rld. Cases, 528; *Mo. Pac. Rly. Co. v. Manufacturing Co.*, Texas, 14 S. W. Rep. 785; *St. L. A. & T. Rly. Co. v. Robbins*, Texas, 14 id. 1075; *Erie Dispatch v. Johnson*, 87 Tenn. 490; same case, 40 Am. & Eng. Rld. Cases, 113; *L. & N. Rld. Co. v. Wynn*, 88 Tenn. 320; same case, 14 S. W. Rep. 311; *L. & N. Rld. Co. v. Gilbert*, 88 Tenn. 430; same case, 42 Am. & Eng. Rld. Cases, 372; *Black v. Goodrich Trans. Co.*, 55 Wis. 319; *M. & O. Rld. Co. v. Hopkins*, 41 Ala. 486; *Express Co. v. Stettaners*, 61 Ill. 184; *C. & N. W. Rly. Co. v. Chapman*, (Ill., May 14, 1890,) 24 N. E. Rep. 417, 419; same case, 42 Am. & Eng. Rld. Cases, 392, 394, 396, 397; *Judson v. Western Rld. Co.*, 6 Allen, (83 Mass.) 486; *Orndorff v. Express Co.*, 3 Bush, (Ky.) 194; *Express Co. v. Blackman*, 28 Ohio St. 144; *Lamb v. C. & A. Rld. & T. Co.*, 46 N. Y. 271.

In my opinion, notwithstanding the stipulation in the aforesaid receipt, limiting, to some extent, the liability of the express company, the company was still bound at its peril to act in good faith as toward its employer, and to exercise reasonable care and diligence with respect to its employer's goods. There was ample evidence to show negligence on the part of the express company, if not gross negligence. The goods were shipped from Kansas City in good order. When they arrived at their destination, at Lawrence, the box containing them was found broken. With due care, however, they might

still have been saved, as is fairly inferable from the evidence, and as was the opinion of the jury, according to their findings. The box, however, was turned over by one of the express company's agents, and a piece came out. Afterward the company's agent attempted to take the box and contents from the express car in which they were transported, and to put the same on a truck, and in doing so some of the type and some of the electrotype plates fell down between the car and the platform. Afterward they gathered them up and put them into a coal scuttle, and took them to a house belonging to the express company, where they remained for some time, and were afterward removed to the express company's office, where they still remain so far as is shown. This seems like gross negligence. It was not necessary, however, that gross negligence should have been shown. Ordinary negligence only, or, in other words, a want of ordinary care, was all that was necessary. In the case of *Kallman v. Express Co.*, supra, the following among other language, with reference to express companies limiting their common-law liability, is used:

"An examination of the authorities bearing upon this point, will, we think, show that they may do so, provided, however, that due care and diligence be used in the discharge of their trust. But carriers cannot in this way shield themselves from the consequences of fraud, gross negligence, and want of care. . . . It is only when such carriers act in good faith, and use due care and diligence in and about their business, that the law permits them to have the benefit of limitations, like that under consideration."

In the case of *L. & N. Rld. Co. v. Wynn*, supra, the following, among other language, is used by the court:

"The author of American and English Encyclopædia of Law says: 'By the clear weight of authority in England, Canada, the United States, and almost without exception in the states of the union, the rule has been adopted that the common carrier can make no contract, the effect of which will be to exempt him from liability for negligence.' (2 Am. & Eng. Encyc. of Law, 822.) Is the limitation in the contract before us within the prohibition of this eminently just and general accepted principle? Manifestly the stipulation does

not contemplate total exemption from liability; it only provides for partial or limited exemption. Upon that distinction the nice and important question arises, can a stipulation of the latter character stand before the law when one of the former kind cannot? Or, to state the same question differently, and so as to apply it more directly to the facts of this case, the rule of law being established, as we have seen it is, that the defendant company could not lawfully have contracted with the plaintiff that it would in no event be liable for any part of the value of the mare, if lost or destroyed, can the limitation of its liability to $100 be upheld in the courts, if it should appear that her death resulted from the negligence of the company, and that she was in fact worth eight times that amount, as the jury found her to be? We unhesitatingly answer, 'No.' The carrier cannot by contract excuse itself from a liability for the whole or any part of a loss brought about by its negligence. To our minds, it is perfectly clear that the two kinds of stipulation — that providing for total, and that providing for partial, exemption from liability for the consequences of the carrier's negligence — stand upon the same ground, and must be tested by the same principles. If one can be enforced, the other can; if either be invalid, both must be held to be so, the same considerations of public policy operating in each case. With great deference for those who may differ with us, we think it entirely illogical and unreasonable to say that the carrier may not absolve itself from liability for the whole value of property lost or destroyed through its negligence, but that it may absolve itself from responsibility for one-half, three-fourths, seven-eighths, nine-tenths, or ninety-hundredths of the loss so occasioned. With great unanimity the authorities say it cannot do the former. If allowed to do the latter, it may thereby substantially evade and nullify the law, which says it shall not do the former, and in that way do indirectly what it is forbidden to do directly. We hold that it can do neither. The requirement of the law has ever been, and is now, that the common carrier shall be diligent and careful in the transportation of its freight, and public policy forbids that it shall throw off that obligation by stipulation for exemption in whole or in part from the consequences of its negligent acts."

In the case of *Express Co. v. Seide*, supra, the supreme court of Mississippi decided as follows:

"A stipulation in a receipt given by an express company

that, if the value of the goods shipped is not stated by the shipper and specified in the receipt, the holder will not demand more than $50 for loss or damage, exempts the carrier from greater liability only when the loss did not result from negligence on its part. This is true, although a greater charge is made for carrying packages over $50 in value, and the shipper fails to state the value and pays the minimum charge." (Part of syllabus.)

In the case of *Kirby v. Express Co.*, supra, the court of appeals of St. Louis, Mo., decided as follows:

"A clause in a contract between an express company and a shipper stated that goods shipped are of the value of $50, unless their value should be inserted in the contract, and that the company, in case of loss, would not be liable for more than $50, unless the value was so inserted, and the value of the goods was not inserted. *Held,* That this did not relieve the company from liability for the full value of the goods if lost through its fault, and that a presumption of negligence arose from the mere fact of loss." (Part of syllabus.)

In the case of *McFadden v. Pac. Rly. Co.*, 92 Mo. 343, supra, the supreme court of Missouri decided as follows:

"While a shipper may release a common carrier from its obligation as an insurer of his property, yet the carrier cannot, by any kind of stipulation, exempt itself from liability for its own negligence." (Part of syllabus.)

See also the other cases above cited, and especially the Pennsylvania cases.

I think the judgment of the court below should be affirmed.