THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. MARK DILL *et al.*

COMMON CARRIER—*Shipment of Live Stock—Limiting Liability.* A common carrier cannot limit his common-law liability by a special contract in writing with the shipper, unless it is freely and fairly made; and the carrier cannot exact, as a condition precedent for carrying stock or goods, that the shipper must sign a contract in writing limiting or changing the common-law liability. If the carrier has two rates or charges for carrying stock or goods—one if carried under the old common-law liability, and the other if carried under a special contract—the shipper must have real freedom of choice in making his selection.

*Error from Lyon District Court.*

ACTION by *Dill* and another against the *Railroad Company*, to recover for damages to a stallion. Judgment for plaintiffs, at the February term, 1889, for $800 damages. The defendant *Company* brings the case to this court. The opinion states the facts.

*Geo. R. Peck, A. A. Hurd,* and *C. N. Sterry,* for plaintiff in error.

*James Humphrey,* and *J. V. Humphrey,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: In May, 1887, Mark Dill and David W. Dill purchased, at Cedar Falls, Iowa, three stallions, and contracted in writing with the Chicago, Rock Island & Pacific

Railroad Company to transport the stallions from Cedar Falls, Iowa, to Eskridge, in this state. Among these stallions was one English-Shire horse, about four years old, and weighing from 1,500 to 1,600 pounds. The contract at Cedar Falls was for a through rate, and the horses were loaded in a car there and shipped through to Eskridge in the same car, being transferred at Atchison, in this state, from the Chicago, Rock Island & Pacific Railroad to the Atchison, Topeka & Santa Fé Railroad. At Atchison, this contract was taken up and a new one attempted to be executed in duplicate by the Atchison, Topeka & Santa Fé Railroad Company and Mark Dill, in charge of the stock. At Eskridge, freight was paid for the entire transportation, and the horses came through to that point in the same car in which they were shipped at Cedar Falls. When they arrived at Eskridge, the horse whose name was "Blyth Uniform" had an acute attack of *laminitus*, or founder, an inflammation of the foot, and was in very bad condition, hardly being able to stand on his feet. Mark Dill and David W. Dill claimed that this inflammation or disease was brought on by the negligence in the handling of the car the horse was in, in the yards at Atchison and Topeka, after it was delivered to the Atchison company. Mark Dill and David W. Dill brought their action against the railroad company to recover $3,500, their alleged damages. The cause was tried by a jury, which returned a verdict for $800, and judgment was rendered accordingly. The railroad company complains of this judgment.

The principal contention is, whether the so-called written contract of May 19, 1887, alleged by the Atchison company to have been entered into by Mark Dill, is binding, and therefore controls. That contract required the shipper to give notice in writing of his claim for damages for any injury to the stock shipped to some officer or agent of the railroad company, before the stock was removed from the place of destination or from the place of delivery, and before it was mingled with other stock. No such written notice was given.

In reply to this contract, set forth in the answer, the plaintiff below alleged that he was compelled to sign the contract as a condition precedent to the transportation of his horse; that different rates or charges were not stated to him by the Atchison agent; that he was not given or offered any option between the different rates of the railroad company, and that he protested against signing the contract; and that, therefore, the contract was not binding or of any force. In certain cases it has been decided by this court that a special contract for a notice in writing of damages or injuries, when reasonably and fairly made, is binding upon the parties. (*Goggin v. Railway Co.*, 12 Kas. 416; *Sprague v. Railway Co.*, 34 id. 347; *W. & W. Rly. Co. v. Koch*, 47 id. 753.)

As a general rule, and in the absence of fraud or imposition, a common carrier is answerable for the loss or injury to stock, if there is no special contract or acceptance; but in all cases where the statute will permit, it is just and reasonable that a contract requiring a written notice of the injury or damages claimed before the stock is removed from the place of destination or mingled with other stock, when properly entered into, should be upheld. Such a contract, however, must be freely and fairly made with the railroad company — not exacted as a condition precedent of shipment. Railroad companies cannot arbitrarily fix any valuation on the property of the shipper, or arbitrarily demand or exact the execution of a contract limiting the common-law liability. (*K. P. Rly. Co. v. Nichols*, 9 Kas. 236.) If a railroad company has two rates for the transportation of goods or stock — one if the goods or stock are carried under the common-law liability, and the other if carried under a limited or special contract — the shipper must have real freedom of choice. He cannot be denied the right to have his goods carried by the carrier under its common-law liability; but if he desires, and if the statute permits and public policy does not forbid, he may enter into a special contract with the carrier limiting the common-law liability. (*K. P. Rly. Co. v. Reynolds*, 17 Kas. 251;

*Railroad Co. v. Simpson,* 30 id. 645; *Express Co. v. Foley,* 46 id. 457; *Railroad Co. v. Lockwood,* 17 Wall. 367; *Hart v. Railroad Co.,* 112 U. S. 331.)

Plaintiff below testified that when he reached Atchison, in the forenoon of May 19th, he went at once to see the agent of the railroad company; that the agent told him to come back in the afternoon, and that he understood he was to get a way-bill; that his train went out at 4 P. M.; that he went back to the office of the agent, as requested, and the agent was not in; that about this time the train was ready to go, and the conductor asked him if he had a way-bill; that he told the conductor he had not, and that the conductor then said he could not get his stock out, and that he had but a short time to get to the train; that he went over to the office of the agent and obtained what he thought was a way-bill, but the agent told him he must sign his name; that, before signing, he told him he did not want to sign his rights away, and that the agent replied "he would have to sign before his stock would go;" that nothing was said by the agent about different rates and charges, and that he hurriedly signed his name to the contract just as the train was to go out, but did not know what he signed. The plaintiff had already signed a contract with the Rock Island Railroad Company for the carrying of his horse to Eskridge, and therefore he very naturally might have supposed that no new contract would be imposed upon him. Upon this and other like evidence, the court instructed the jury that—

"It is claimed by the plaintiff, as an excuse for not giving the written notice, that the contract was not entered into by him voluntarily, but he was constrained to execute it by imposition. The mere fact that he approached the agent at Atchison and signed that contract without knowing its contents, he being able to read, would not release him from his liability under the contract. . . . If the defendant's agents at Atchison, by any active conduct on their part, misdirected, misinformed or misled the plaintiff, and by reason thereof he was induced to sign the contract, when but for such imposition or misleading conduct he would not have done so, I

think for that reason the contract would not be binding. The burden of proof is upon him to show that the contract under which this animal was shipped was improperly secured from him, and that he was induced to make it under such circumstances as I have named, before he can ask a jury to find he is not liable thereunder."

Under the pleadings and evidence, there was sufficient for the court to give this instruction, and therefore we do not think it was misleading or erroneous. (*K. P. Rly. Co. v. Reynolds*, 17 Kas. 251.) If plaintiff below had signed and received the contract freely and fairly, without objection, he would, we suppose, be conclusively presumed to have assented to its conditions. (*Express Co. v. Foley*, supra; *Merrill v. Express Co.*, 62 N. H. 514; *Grace v. Adams*, 100 Mass. 505.)

If the agent of the railroad company had stated to him the different rates and charges for transporting stock, plaintiff below might have tendered a reasonable sum for the services and risk, and demanded transportation of his horse, according to the common-law liability of the company. The mere fact that a carrier's contract is not read or explained to a shipper is not sufficient to avoid it, especially where he receives a duplicate or copy. The rule concerning the liabilities of shippers on contracts of this kind, which they fail to read or understand through their own negligence, is stated in Hutchinson on Carriers, § 240; *St. L. I. M. Rld. Co. v. Weekly* (Ark.), S. W. Rep. 137. But a common carrier cannot exact of a shipper his signature to a special contract limiting the common-law liability as a condition precedent of shipping or transporting stock, because, in such a case, the carrier resorts to unfair means. A contract thus exacted is not freely and fairly entered into. In the Reynolds case, after Reynolds had loaded his cattle in the car, the agent demanded that he sign a special contract, or have the cattle unloaded. This court said "this was not right." In this case, if the plaintiff's evidence is to be believed, and we do not find in the record any conflict therewith, his horses were in the car at Atchison, ready to go with the train to Eskridge, when the agent demanded "that he sign a

special contract, or his horses would n't go on that train." The cases are therefore very similar, especially so, as one of the conditions of the contract referred to was to relieve the Atchison company "from the liability of a common carrier in the transportation of the stock."

It is further argued, that the contract with the agent of the Rock Island Railroad Company at Cedar Falls inured to the benefit of the Atchison company. (*Kiff v. Railroad Co.*, 32 Kas. 263.) There is no evidence in this case that the Atchison company was, at the time of receiving the horse which was subsequently injured, the agent of the Rock Island company, nor does it appear from the evidence that the Atchison company ratified or accepted any arrangement or contract entered into between the plaintiff below and the Rock Island railroad company. On the other hand, it does appear that that contract was wholly ignored and repudiated. When the horses were shipped from Atchison, a new contract was attempted to be executed in writing. Under the contract executed at Cedar Falls with the Rock Island railroad, the price for transportation to Eskridge, Kas., was $62 only; when the horses reached Eskridge, there was collected not only $62, but in addition $27, which probably were the charges for the transportation of the horses and Mark Dill from Atchison to Eskridge. Therefore, there was no error in proving the amount that the agent at Eskridge charged and received. If the defendant below had accepted the contract of the Rock Island company, had carried the horses to Eskridge at the price and on the conditions therein named, it might have claimed the limitation upon the amount of damages agreed to in that contract. (*Kiff v. Railroad Co.*, supra; *Express Co. v. Foley*, supra; and *Hart v. Railroad Co.*, supra.)

Complaint is made that the verdict and many of the special findings of the jury are unsupported by the evidence. Three experts testified upon the trial. Two of them testified that the acute attack of *laminitus*, from which the horse suffered, was the result of its standing upon its feet during its long journey in the cars. The other expert differed in his opin-

ion from these witnesses. The evidence of negligence of the railroad company is not, to the writer, very satisfactorily established; but considering all of the evidence, this case comes within the rule that, where there is some evidence sustaining the verdict and special findings, and such verdict has received the approval of the trial court, this court will not interfere, even though the evidence seems to greatly preponderate the other way. (*K. P. Rly. Co. v. Kunkel*, 17 Kas. 145.)

Complaint is further made that improper evidence was admitted and erroneous instructions given and refused, but, after an examination of all these matters, we do not perceive any prejudicial error therein.

There are several questions concerning the federal act relating to interstate commerce and other statutes discussed in the brief of plaintiff below, but, in view of the conclusion we have reached, it is not necessary to comment upon them.

The judgment of the district court will be affirmed.

JOHNSTON, J., concurring.

VALENTINE, J.: I concur in the decision of this case largely upon the principles enunciated in my dissenting opinion in the case of *Express Co. v. Foley*, 46 Kas. 457, 472; same case, 26 Pac. Rep. 665–671, which is referred to three times in the foregoing opinion. In other words, I concur upon the principle that a common carrier is always bound to exercise *good faith* as toward his or its employer, and is always responsible for loss suffered by the employer, *occasioned by the carrier's own negligence or other wrongs;* and this without reference to contract, except that the carrier may generally in advance make a valid contract with the employer, that after the loss, if any, shall have occurred, the employer shall give to the carrier a reasonable notice of the loss, so that the carrier may take proper steps to ascertain the loss, and to save himself or itself from further loss or from further responsibility, or from possible imposition. As to the other matters, I concur for the reasons stated in the foregoing opinion.