THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY
v. WILLIAM SHERLOCK.

### No. 10353.

COMMON CARRIER—*stipulation in contract of, limiting amount of liability for stock lost or injured in transit, made without permission of Railroad Commissioners, void.* The common law imposes upon railroad companies as common carriers the obligation to pay in full for property lost by them which they have undertaken to transport, or damages to the extent of the injuries such property may have sustained. Section 13, chapter 124, Laws 1883, (§ 17, ch. 69, Gen. Stat. 1897), prohibits railroad companies from changing or limiting their common law liability except by regulation or order of the Board of Railroad Commissioners. *Held*, that a stipulation in a contract for the shipment of live stock limiting the amount for which the railroad company shall be liable in case of loss or injury, made without the permission or order of the Board of Railroad Commissioners, is invalid and cannot be enforced.

Error from Wilson District Court. L. Stillwell, Judge. Opinion filed January 8, 1898. *Affirmed.*

*J. W. Gleed* and *C. Hamilton*, for plaintiff in error. *Gleed, Ware & Gleed*, of counsel.

*C. S. Reed*, for defendant in error.

DOSTER, C. J. The defendant in error shipped his race horses, over the line of railway of plaintiff in error, from Fredonia to Pittsburg, Kansas. At the intermediate station of Columbus, the train upon which the animals were carried negligently collided with another train of the plaintiff in error. The horses were injured as a result of the collision. A suit for damages was instituted and a verdict and judgment for plaintiff were rendered. From this judgment the defendant below prosecutes error to this court.

The claims of error are based solely upon instructions given and requests for instructions refused.

These instructions and refusals to instruct involve an interpretation of the contract of shipment entered into between the parties and a construction of the law relative to contractual limitations upon the liability of railroad companies as common carriers. The defendant in error engaged a car of the Company's agent for the shipment of his horses, and executed with the agent an ordinary shipping contract on one of the Company's usual printed forms. Prefixed to this contract, and at the top of the same sheet, was some other printed matter, in the following form :

Form 34½.

"ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY.

"RULES AND REGULATIONS FOR THE TRANSPORTATION OF LIVE STOCK.

" Live Stock, L. C. L., of all kinds, at the following estimated weights : One horse (gelding and mare) or pony, mule or horned animal, 2,000 lbs. ; two animals, 3,500 lbs. ; three, 5,000 lbs. ; each additional animal, 1,000 lbs. Bulls, 2,000 lbs. each. Burros, 750 lbs. each. Calves (under 1 year), 500 lbs. each. Colts (under 1 year), 750 lbs. each. Cow and calf together, 2,500 lbs. Goats in crates, estimated weight, 200 lbs. each. Hogs, actual weight. Mare and colt (colt under 1 year), together, 2,500 lbs. ; each additional colt (under 1 year old ), 500 lbs. Sheep, 200 lbs. each. Stallions or jacks, 3,000 lbs. each.

" In case the owner or consignor agrees to save the St. Louis & San Francisco Railway Company from liability for any or of all the causes enumerated in the following contract, and also agrees to load, unload, feed, water and attend to the stock himself, etc., as specified therein, the Special Rates of Tariff based on such contract, will be given.

" The said St. Louis & San Francisco Railway Company, as aforesaid, will not assume any liability in excess of the following valuation by shippers : Each horse or pony (gelding, mare or stallion), mule or jack, $100 ; each ox or bull, $50 ; each cow, $30 ; each calf, $10 ; each hog, $10 ; each sheep or goat, $3.

" Where the declared value exceeds the above, an addition of twenty-five per cent. will be made to the

rate for each one hundred per cent. or fraction thereof of additional declared valuation per head. Animals exceeding in value $800 per head will be taken only by special arrangement.''

Immediately below the above rules and regulations was the contract proper, in the following form :

"LIVE-STOCK CONTRACT.

"No. of cars, 16389. Initials, A. F.

FREDONIA, KANS., Station, August 14, 1892.

"This agreement, made between the St. Louis & San Francisco Rly. Co. of the first part and Wm. Sherlock of the second part, witnesseth : That whereas the said St. Louis & San Francisco Railway Co., as aforesaid, transports live stock only as per above rules and regulations, now, in consideration that the said party of the first part will transport for the party of the second part one car loads of horses to Pittsburg, Kansas, station, at the rate of 26.75 dollars per car load, the same being a special rate, lower than the regular rates mentioned in their tariff, the said party of the second part hereby releases said party of the first part from the liability of a common carrier in the transportation of said stock, and agrees that such liability shall be only that of a private carrier for hire, and from any liability for any delay in shipping said stock after the delivery thereof to the agent of said party of the first part, or for any delay in receiving the same after being tendered to said agent.

"The evidence that the said party of the second part, after a full understanding thereof, assents to all the conditions of the foregoing contract, is his signature hereto.          J. D. LINGENFELTER,

Agent for St. Louis & San Francisco Railway Company.

WM. SHERLOCK, Shipper.

Witness : J. W. LINGENFELTER.

(To be other than either of the contractors.)

"Executed in duplicate."

It is contended on behalf of the plaintiff in error that the declaration made in the contract proper, above quoted, that the railway company " transports live stock only as per above rules and regulations,'' incorporated such rules and regulations, by the refer-

.ence thereto, into the contract of shipment, and thereby charged the shipper with notice that the Company assumed only a limited liability for the payment of losses, if any occurred, unless the value of the animals shipped was specially stated to exceed the schedule rate ; and that the failure of the shipper to declare the value of his animals to be greater than the limited sum named, implied his assent to the Company's declaration of limited liability ; and it is forcibly contended that, inasmuch as the transportation charges were properly based in part upon the schedule value of the animals shipped, the contract of limited liability was one reasonable and just to make.

Well considered cases have held that matter not printed or written in the instrument to which the shipper affixes his signature, but referred to as appended to it, or to be found on the back of it, cannot be thus incorporated by such reference as an integral part of the contract. *Ormsby v. U. P. Rly. Co.*, 4 Fed. 710 ; *Railroad Co. v. Manufacturing Co.*, 16 Wall. 319. We may, however, for the purposes of the law as we find it, concede the correctness of the interpretation which plaintiff in error places upon the contract in question,—concede that the contract proper incorporates by reference thereto the printed rules and regulations and that the two in combination make but a single instrument.

The common law imposes upon a common carrier the obligation to safely transport and deliver the goods of the public generally, and for a failure to do so compels it to respond in damages to the extent of the losses sustained. These rules of duty and liability are fixed in considerations of public good, and do not arise *ex contractu.* The policy of the law attaches the obligation and responsibility in question to the

office or calling of the common carrier. The services of a carrier are of a necessary character, and are in constant demand by the general public. Therefore, the duty of performance upon the part of those who undertake the business of carrying is in the nature of a public office or trust. When the business of carrying started upon the growth which has reached its present magnitude, and began to be monopolized by large incorporated companies, contractual devices were resorted to for the purpose of mitigating the rigor with which the common law held the carriers to accountability for the full measure of losses sustained. Among the first of such devices were posted notices, that the carrier assumed a conditional or partial liability only, which the shipper was presumed to have seen and assented to. This was soon after superseded by stipulations to the same effect inserted in the contract of shipment, or otherwise specially brought to the shipper's notice. Ray's Negligence of Imposed Duties, ch. 2.

The question whether upon common law principles a common carrier may stipulate with the shipper for exemption from its common law liabilities is a vexatious and confusing subject of controversy in the courts. By some it is held that the public nature of the business of carrying imposes upon those who assume the conduct of such business, the obligations named, from which they can relieve themselves by no act of their own ; that such obligations are conditions annexed to the office, from which the carrier can be exempted only by legislative enactment. Other and perhaps a greater number of cases hold that, while the law will not permit the carrier to contract for immunity from the con-sequences of its own negligence, it will allow it to agree with the shipper upon the extent of its liability in case of loss by the acts of others or by its own non-negligent

accidents ; and still others hold that, while it may not stipulate for total exemption from liability for its own negligence, it may, nevertheless, as in the case of the insurance feature of its obligation, agree upon the extent of its liability in case of loss or injury through its own negligence.   However, it is held by all the courts which admit the right to stipulate for a limited liability that the terms of the contract must be proposed by the carrier in understandable language, be fair and reasonable between the parties, and be accepted by the shipper without the practice upon him of fraud or imposition.   What the common law in question really is, has been a subject of contrary opinion in this State. *Express Co. v. Foley*, 46 Kan. 457–472, 26 Pac. 665.    It is not necessary, however, for us to undertake to determine it.   What has been said as to the divergent views of the courts has been by way of introduction to a statement of the legislative enactment of this State, which determines for us the rule of decision to be made. Section 13, ch. 124, Laws 1883, (Gen. Stat. 1897, ch. 69, § 17,) declares it in a single and emphatic sentence :

"No railroad company shall be permitted, except as otherwise provided by regulation or order of the board [of Railroad Commissioners] to change or limit its common law liability as a common carrier."

The common law liability of railroads as common carriers was to make the shipper whole by payment in full for property lost or damages to the extent of the injuries sustained.   If, formerly, this liability could be limited by contract with the shipper, it can be done so now, as a matter of legal right, only by the permission or order of the Board of Railroad Commissioners.   No such order or permission has been given ; at least the giving of it is not claimed.

The judgment of the court below is, therefore, affirmed.