[No. 1336.   February 4, 1911.]

THE ATCHISON, TOPEKA AND SANTA FE RAIL-
WAY COMPANY, Appellant, v. JORDON RODGERS,
Appellee.

SYLLABUS (BY THE COURT).

1.   An assignment of error that the court erroneously
admitted the deposition of a given witness questions the
admissibility of the deposition as a whole, and not the
admissibility of isolated answers therein.

2.   Objections not made in the court below to questions
propounded to witness will not be considered on appeal.

3.   The refusal of the court to permit defendant to prove
on cross examination of plaintiff the execution of a contract
by the latter is, if erroneous, not prejudicial, where plaintiff's
pleadings admit execution of such instrument.

4.   Written stipulations between counsel when fairly
entered into should be enforced, but such are not by strained
construction to be given an effect beyond their terms.

5.   Where a negative condition lies peculiarly within the
knowledge of the other party the averment of such condition
is taken as true unless disproved by such other party.

6.   Applying the principle as stated, where the statute
of a foreign state tendered by the plaintiff against the de-
fendant railroad company provides that no such company
shall be permitted, except as otherwise provided by regula-
tion or order of the board of railway commissioners, to
change or limit its common-law liability as a common carrier,
the burden is not upon the shipper to show that no such
permission exists, but is upon such company to show that
permission was given it to make such a contract.

7.   The validity of a contract executed in a sister state
will be determined by the courts of this jurisdiction accord-
ing to the laws of such sister state as construed by the
highest court of such state, unless the intention of the
parties appears that a different construction shall prevail,

or unless such a construction conflicts with some settled policy of this jurisdiction.

8. Under the laws and decisions of Kansas the common law liability of railroads as common carriers is to make the shipper whole by payment in full for property lost or damages to the extent of injuries sustained, and a contract limiting this liability is void unless made by permission or order of the State Board of Railroad Commissioners.

9. The provisions of the Act of Congress of June 29, 1906, 34 Stat. 595, known as the Hepburn Act, did not displace the previously existing state statute restricting the right of a common carrier to limit liability upon interstate shipments. Latta v. Chicago, etc. Ry. Co., 172 Fed. 850, followed.

10. The use by the shipper of a contract as a basis for transportation accompanying animals shipped does not estop him to deny the validity of a provision of that contract limiting the carrier's common law liability where such contract obligates him to accompany such animals so as to feed, water and otherwise attend them.

Appeal from the District Court for Bernalillo County before IRA A. ABBOTT, Associate Justice. Affirmed.

RALPH E. TWITCHELL for Appellant.

Where a witness is a party to an action he may be asked on his cross-examination as to discrepancies between his testimony and sworn allegations in his pleadings. Hall v. C. R. I. & P. Ry. Co., 51 N. W. 150; Stamper v. Griffin, 12 Ga. 450; East River Natl. Bk. v. Romertze, 49 N Y. 577; McCullough v. McCullough, 12 Ind. 487; Johnson v. Armstrong, 12 Southern 73; Dawson v. Calloway, 18 Ga. 573; King v. Atkins, 33 La. Ann. 1057; Blackington v. Johnson, 126 Mass. 21; Com. v. Morgan, 107 Mass. 199; Ireland v. Railroad Co., 79 Mich. 163; People v. Barker, 27 N. W. 539; Hay v. Reid, 85 Mich. 296; State v. Soper, 148 Mo. 217; Railroad Co. v. Silve, 56

Mo. 265; State v. Allen, 11 S. E. 1016; Legg v. Drake,
1 Ohio St. 286; Kibler v. McIlwain, 16 S. C. 550; Sands
v. Rd. Co., 64 S. W. 478; Pine v. Blake, 59 Tex. 240;
Wentworth v. Crawford, 11 Tex. 127; Gilmer v. Higley,
110 U. S. 47; Chandler v. Allison, 10 Mich. 460.

The difference between an exception and a proviso
in a statute is, that the first exempts absolutely from the
operation of the enactment, whereas, the latter only defeats
the operation of the enactment conditionally. 11 A. & E.
Enc. Law 556; Simpson v. Ready, 12 M. & W. 736.

The measure of damages, if any, was the value of the
animals at point of destination. 3 Hutchinson on Car-
riers, 3 ed., sec. 1360.

A stipulation concerning the proceedings in a pend-
ing case is an obligation unlike ordinary contracts between
parties not in court, since no consideration is necessary to
its validity, and no mutuality is required. Burnham v.
N. C. Railroad Co., 88 Fed. 630; Howe v. Lawrence,
22 N. J. L. 105; Harlem Bridge R. Co. v. Westchester, 143
N. Y. 61; State v. Fooks, 65 Iowa, 452; State v. Polson,
29 Iowa 133; McGuire v. N. Y. Cent. R. Co., 6 Daley,
N. Y. 170; in re N. Y. etc. R. Co., 98 N. Y. 447; Hen-
derson v. Merritt, 38 Ga. 232; Mining Co. v. A. P. Mining
Co., 78 Cal. 629; Murto v. McKnight, 28 Ill. App. 238;
Whitehouse v. Halstead, 90 Ill. 95; Woodruff v. Thatcher,
117 Pa. St. 340; Mutual Ins. Co. v. Harris, 97 U. S.
331.

He who accepts and retains a benefit under an in-
strument is held to have adopted the whole and to have
renounced every right inconsistent therewith. Matter of
Peaslee, 73 Hun. 113; Fry v. Morrison, 159 Ill. 244;
Kelle v. Stanley, 86 Ky. 240; Hainer v. Iowa, etc., 78
Iowa 252; Smith v. Guild, 34 Me. 443; Martin v. Ives,
17 S. & R., Pa. 364.

The law of the place where the contract is made
must ordinarily, in absence of proof of the intention of
the parties to the contrary at the time of the making
of the contract, be looked to for the creation of, obligations
imposed by, and interpretations of any rights arising out of
it. Railway Co. v. Kavanaugh, 92 Fed. 56; Dyke v.

Railroad Co., 45 N. Y. 113; in re Released Rates, 13 I. C. C. R. 550; Hepburn Act, June 29, 1906.

The railway company will not be liable for a greater sum than that at which the property is valued in contract fairly and honestly entered into with the owner of the property sought to be transported, although the company's own misconduct has caused the loss. Hart v. Railroad Co., 112 U. S. 331; Brehome v. Dinsmore, 25 Md. 328; Graves v. R. R. Co., 144 Mass. 284; Zimmer v. Railroad Co., 137 N. Y. 460; Coupland v. Railroad Co., 15 L. R. A. 534; Jennings v. Smith, 106 Fed. 139; Met. Trust Co. v. Rd. Co., 107 Fed. 628; Doyle v. Rd. Co., 126 Fed. 844; MacFarlane v. Express Co., 137 Fed. 982.

MARRON & WOOD for Appellee.

Contract under common law liability. So. Pac. Ry. Co v. Arnett, 111 Fed. 849; 6 Cyc. 519.

Cross examination is limited to an inquiry into the facts and circumstances connected with the matter stated in the direct examination of the witness. 8 Enc. P. & P. 102-104, vol. 2, Supp. 324, 325; McKnight v. U. S., 122 Fed. 926; Mine etc. Co. v. Park & Lacy Co., 107 Fed. 881; Hemminger v. Western Assurance Co., 95 Mich. 355; Grubb v. State, 117 Ind. 277.

Section 5987, Chapter 84, General Statutes Kansas 1901, governs the transaction. Com. v. Jennings, 121 Mass. 27; U. S. v. Cook, 17 Wall. 168; Maxwell Land Grant Co. v. Dawson, 151 U. S. 605; St. Louis & S. F. R. R. v. Sherlock, 51 Pac. 899; Matter of Huss, 126 N. Y. 537.

A construction will be placed upon a stipulation which will render it reasonable and just to both parties, rather than unreasonable and unjust. 20 Enc. P. & P. 658; David Bradley Mfg. Co. v. Eagle Mfg. Co., 57 Fed. 987; Chicago Livestock Co. v. Fix, 78 Pac. 316.

That the plaintiff rode on the train with his stock, as he was obliged to, was no waiver of his rights. Latta v. C., St. Paul & O. Ry., 172 Fed. 855; St. Louis & S. F. R. R. Co. v. Gorman, 100 Pac. 647.

The contract and shipment being made in Kansas, the Kansas law governs and declares the rights of parties, even though it relates to interstate commerce. C. N. & St. P. Ry. Co. v. Solon, 169 U. S. 133; Martin v. P. & L. E. Ry., 203 U. S. 284; I. C. Ry. Co. v. Beebe, Ill., 43 L. R. A. 210; Meuer v. C. N. & St. P. Ry. Co., S. D., 25 L. R. A. 81; Davis v. C. N. & St. P. Ry. Co., Wis. 33 L. R. A. 654; Brockway v. Am. Ex. Co., 168 Mass. 257; Toledo Bank v. Shaw, 61 N. Y. 283; K. C. etc. R. R. Co. v. Simpson, 30 Kas. 645; A. T. & S. F. Ry. Co. v. Mason, Kas., 46 Pac. 31; Railway Co. v. Lockwood, 17 Wal. 357; K. C. & St. J. Ry. Co. v. Simpson, 30 Kas. 645; St. L. & S. F. Ry. v. Sherlock, 51 Pac. 899; 29 Cyc. 852; Erie R. R. Co. v. Pury, 185 U. S. 148; Dodge v. Cornelius, 168 N. Y. 242; Jacobi v. State, 187 U. S. 133; Latta v. C. St. P. N. & O. Ry. Co., 172 Fed. 850.

The contract was an attempted limitation of the common law liability of the defendant for negligence, and was, therefore, void, both at common law and under the Kansas statute. Hart v. Railroad Co., 112 U. S. 331; 6 Cyc. 398, 409; K. C. & St. J. R. R. Co. v. Simpson, 30 Kas. 645; St. L. & S. F. R. R. Co. v. Sherlock, 51 Pac. 899; St. L. & S. F. Ry. Co. v. Pribbey, 50 Pac. 458; Latta v. St. P. M. & O., 172 Fed. 850; Bermel v. N. Y. etc. Ry., 62 App. Div. 389, affirmed 172 N. Y. 639; Hooper v. Wells Fargo & Co., 27 Cal. 11.

### STATEMENT OF THE FACTS.

The appellee, Jordon Rodgers, sued the appellant railroad company to recover the value of two jacks which Rodgers delivered to the appellant at Olathe, Kansas, on March 6, 1908, for transportation to San Marcial, New Mexico, and which it is alleged were killed en route near Newton, Kansas, through the negligence of the company's agents. The ownership of the animals, their value, and the defendant's negligence in causing their death were substantially the only allegations of the complaint put in issue by the answer. The latter set up as defensive new matter a written contract entered into at the time and

place of shipment limiting the liability of the defendant to one hundred dollars for each animal. The plaintiff replied, admitting the execution of the contract, but denying its validity as such because contrary to, and null and void under the laws of the State of Kansas where executed. Holding, in accordance with this contention, the court declined to permit the contract to go to the jury. A verdict was returned for the plaintiff in the sum of $2125.00, from a judgment upon which the defendant appeals.

## OPINION OF THE COURT.

POPE, C. J.—(after making the foregoing statement of the facts.) Most of the errors alleged are upon the admissibility of evidence. It is said, first, that the court erred "in permitting to be read to the jury, over the objection of the defendant, the deposition of W. D. Gibson, of Blackwater, Missouri." This assignment upon its face is an objection to the admissibility of the entire deposition, and not a portion thereof. Treating it as such it is a sufficient disposition of such exception to say that the only objection urged on the trial to the whole deposition was that it was taken without notice to counsel. This objection was, however, subsequently withdrawn, so that the deposition as such went in finally without objection. Upon the trial and at this bar, however,—diverging from the assignment of error—it was urged that certain questions and answers contained in the deposition were improperly received. Waiving in the interest of a full consideration of the case the manifest insufficiency of the assignment to reach these rulings, we find that the following occurred on the reading of the depositions at the trial:

"6. Do you know what was the fair and reasonable value of the said jacks on the date of sale to the plaintiff? Counsel: I object to the interrogatory on the ground that the fair and reasonable value of the jacks on the date of the sale has nothing to do with the case and because it is immaterial and irrelevant. The Court: Objection overruled. Counsel: Exception. A. Yes.

"7. State your experience in the buying and selling of jacks as it existed on the third day of March, 1908, from which you gained the knowledge of value upon which you answered the preceding question? Counsel: I object to this as not being a relevant question and as incompetent and immaterial. The Court: Objection overruled. Counsel: Exception. A. I have been buying, raising and selling jacks for thirty (30) years and during this time I have handled quite a number of jacks. I have always attended the important jack sales made in my own neighborhood.

"8. State what was the fair and reasonable value of the said jacks on the day of the sale and delivery to the plaintiff? A. These jacks were worth fourteen hundred ($1400.00) dollars for the two.

"9. Assuming the jacks to be in the same condition as when delivered to the plaintiff, state, if you know, what was their actual value at Olathe, Kansas, on or about the 6th day of March, 1908? Counsel: I object to the answer of the ninth interrogatory on the ground that it is vague and not responsive to the question. The Court: Overruled. Counsel: Exception. A. They were worth fourteen hundred ($1400.00) dollars, plus expense and freight.

"10. State, if you know, whether or not there is any fixed market or definite market price for jacks at or near Blackwater, Missouri? Counsel: I object to the tenth interrogatory on the ground that it is immaterial and irrelevant whether there was any market value for jacks at Blackwater, Missouri. Opposing Counsel: I will withdraw the question on the objection."

It is clear that there was no error in the foregoing. Questions 6 and 7 were purely preliminary and went to the qualification of the witness to testify as to value, so that the objection that the value of the jacks at the time and place of sale was immaterial, was prematurely made. To question 8, which did call for such value of the animals at Blackwater, Missouri, there was no objection. To question 9, which asked the value at Olathe, Kansas, there was no objection, the point made being upon the answer

cn the ground that it was vague and indefinite, neither
of which objections was tenable.   Question 10 was, upon
objection, withdrawn.   We find nothing, therefore, in the
record, to invoke a decision as to whether the court cor-
rectly permitted evidence of value at points other than
the destination, San Marcial, New Mexico.   Were the
matter before us much might, however, be said—in view of
the fact that the defendant had inquired of plaintiff on
his direct examination what he had paid for the jacks
at Blackwater—to support the ruling of the court permit-
ting testimony that the price paid was a low one according
to, market values at the place he purchased.   Since the
defendant was permitted to prove that the jacks cost only
a thousand dollars, it would seem that plaintiff was en-
titled to reply by his testimony that, while this was true,
he got them much below the actual value, all this, of
course, to throw light upon the ultimate question, which
was the value at San Marcial.

The remaining assignments are all connected with the
special contract pleaded in the answer limiting liability
to one hundred dollars and the Kansas statute which the re-
ply sets up as rendering the contract ineffectual.   Appellant
complains that he was not allowed to prove by plaintiff on
cross examination the execution of this contract.   We
deem this ruling entirely without prejudice, however,
for the reason that plaintiff's reply, as we read it,
admitted the execution of the paper pleaded in the ans-
wer.   We are unable to see how a refusal to permit plain-
tiff to testify to the execution of an instrument, which was
mutually admitted, could in any sense be prejudicial.

A further assignment is that the court erred in not
giving the stipulation tendered on the trial the effect of
precluding the plaintiff from questioning the legal efficacy
of the contract as limiting recovery for the animals.   The
stipulation was as follows:   "It is hereby agreed between
counsel for plaintiff and defendant, in the above entitled
cause, that the paper hereto attached is an exact copy of
the instrument in writing signed by Jordon Rodgers, of
Olathe, Kansas, on the 6th day of March, 1908, for the
shipment of two (2) head of jacks, and one stallion, from

Olathe, Kansas, to San Marcial, New Mexico, and that in the transportation of said livestock the said Jordon Rodgers used said instrument in writing as and for his transportation accompanying said stock, and that the said contract, Exhibit A, may be used in evidence in this case the same as if the representatives of the defendant, H. P. Phillips and J. A. Morrison, were here present and testified to the fact of the signing of said instrument in writing by said parties." The circumstances surrounding the execution of this stipulation, and, indeed, its very terms, show that it was intended to stipulate only to the genuineness of the instrument and its use by plaintiff for transportation, thus relieving defendant from the necessity of bringing to the trial the two witnesses named in it. It would be a strange and utterly unreasonable construction of this agreement to hold that the plaintiff assented thereby to the validity of the contract as limiting his recovery and thus practically stipulating away his whole case. While stipulations fairly made between counsel ought to be enforced, they are not to be given effect beyond their terms.

Error is further alleged because the court erred in admitting a Kansas statute, the material portion of which is as follows: "Sec. 5987. Common-Law Liability. Paragraph 151. No railroad company shall be permitted, except as otherwise provided by regulation or order of the board, to change or limit its common-law liability as a common carrier." The specific objection was that the tender of the statute was not accompanied by "rules and regulations of the board of railway commissioners of the State of Kansas." The argument is that as the prohibition of the statute runs, except "as otherwise provided by regulation or order of the board," the burden was upon the plaintiff to establish that the present case was not within any exception; or, in other words, to establish that the defendant company had not been permitted by special order of the board to change or limit its common-law liability. We are, however, not of the opinion that this burden rested upon the plaintiff. The effect of the statute was absolutely to prohibit such limitation save

when in terms permitted and provided otherwise.   Proof
that no such permission had been given was proof of a
negative.   The existence of an order or regulation of the
board especially permitting the railroad to impose such
limitations was a matter peculiarly within the defendant's
knowledge.   To require the plaintiff to establish a nega-
tive proposition by presenting all of the orders and regula-
tions of the board since its existence to show the absence
of a permission, when the defendant by its peculiar know-
ledge was able readily to say whether or not such per-
mission had been given it, would be imposing a burden
which the law does not place upon the plaintiff under
such circumstances.   The proper rule, and one which we
believe the authorities fully countenance. is to consider the
plaintiff's contention prima facie established by the
introduction of the statute, leaving it to the defendant
to demonstrate, if it can, the existence of a condition
taking it out of the general rule.   Greenleaf on Evidence,
sec. 79; Great Western R. R. Co. v. Bacon, 30 Ill. 347,
83 A. D. 199; McIntyre v. Ajax Mining Co., 20 Utah
323; Givens v. Tidmore, 8 Ala. 745.   This, indeed, we
infer from St. Louis etc. Railroad v. Sherlock, 59 Kans.
23, 51 Pac. 899, to be the rule of the Kansas courts in
dealing with their own statute, and such a construction,
upon a matter even of mere procedure, is entitled to great
respect.

A further question raised in the case—both by ex-
ception to the refusal of the court to admit the contract
in evidence, and by exception to certain instructions deal-
ing with the contract—is whether the statute just con-
sidered renders the contract ineffectual as a limitation
upon the company's liability.   The present case proceeded
upon the ground of the defendant's negligence in handling
the animals shipped.   There was evidence—practically
uncontradicted—showing such negligence.   Indeed, the
present appeal does not question the verdict upon the point.
It is claimed, however, that under the terms of the contract
tendered the recovery should have been limited to the
amount named therein, to-wit, one hundred dollars for
each animal.   While contracts have been permitted between

common carriers and shippers, relieving the former from liability as insurers and from other liability not flowing from negligence (York Co. v. I. C. R. R. Co., 3 Wall. 107; N. Y. C. R. R. Co. v. Lockwood, 17 Wall. 357), such contracts have been declared unreasonable and void in so far as they attempt to stipulate away liability for negligence. Express Co. v. Kountze Bros., 8 Wall. 342; The Kensington, 183 U. S. 268. It has been held, however, that the reasoning of this last does not apply to contracts, which, in consideration of a reduced freight rate, embody an agreed valuation of the article shipped, and thereby limit the amount of recovery therefor, and that this latter class of contract may be enforced. The leading American case upon this subject is Hart v. Railroad, 112 U. S. 331, wherein the rule and its reason are stated to be, that an agreement on the valuation of the property carried, with the rate of freight adjusted to such valuation and conditioned that the carrier assume liability only to the extent of such agreed valuation, in case of loss by the negligence of the carrier, will be upheld as a proper and lawful mode of securing the due proportion between the amount for which the carrier is responsible and the freight received and of protecting the carrier against extravagant valuations. Still another line of cases will be found where it is held that contracts will not be enforced, which, under the guise of an agreed valuation, fix a purely fictitious value, and thereby amount to an attempt by the carrier arbitrarily to limit its liability. The class of contract last mentioned has been expressly described in Central Ry. Co. v. Hall, 124 Ga. 322, as attempting "an arbitrary preadjustment of the damages," and all such contracts whose legal effect is an arbitrary limitation of liability, rather than a fair agreement as to value based upon the corresponding rate for shipment, have been held invalid. The full subject has been considered in 13 Interstate Commerce Reports, page 551, "In the Matter of Released Rates," where, in an opinion by Commissioner Lane, the several classes of contracts limiting liability have been exhaustively discussed. The present case, however, does not call for a consideration of these distinctions nor the

settling of a rule for this jurisprudence as to the validity of such a contract as that herein involved limiting liability. This suit being upon a Kansas shipment, for injuries inflicted in Kansas, the cause of action is governed by **7** the laws and decisions of that state and the rights of the parties will be adjudged accordingly, unless contrary to the public policy of this jurisdiction. Liverpool etc. Steam Co. v. Insurance Co., 129 U. S. 397; Central of Georgia Ry. Co. v. Cavanaugh, 92 Fed. 56; Hanson v. Great Northern Ry., (N. D.) 121 N. W. 78. There being no settled public policy of this jurisdiction upon the subject, we accordingly proceed to interpret this contract and determine the plaintiff's rights according to the laws and decisions of Kansas. Under the holdings of the courts of that state interpreting the common-law and prior to **8** the statute to be presently considered, such a limitation as is here asserted was deemed void. Kansas City Co. v. Simpson, 30 Kas. 645, 46 Am. Reports 104, decided in 1883. However, by the Kansas statute introduced in evidence, passed in 1883, it was provided that no railroad company shall be permitted, except as otherwise provided by regulation or order of the board, to change or limit its common-law liability as a common carrier. As we read the decisions of that state, the doctrine of the Supreme Court of Kansas is that such a statute renders void a limitation as to value such as that here imposed, even though the same takes the form, as here, of an agreed valuation. St. Louis & San Francisco R. R. v. Sherlock, 59 Kan. 23, 51 Pac. 899; St. Louis & S. F. R. R. v. Tribbey, 6 Kans. App. 467, 50 Pac. 458. In the former case, after discussing the several rules on the subject of limitations upon liability, it is said: "It is not necessary, however, for us to undertake to determine it. What has been said as to the divergent views of the courts has been by way of introduction to a statement of the legislative enactment of this state, which determines for us the rule of decision to be made. Sec. 13, ch. 124, Laws 1883, sec. 17, chap. 69, General Statutes 1897, declares it in a single and emphatic sentence: 'No railroad company shall be permitted, except as otherwise provided by

regulation or order of the board (of railroad commissioners) to change or limit its common-law liability as a common carrier.' The common-law liability of railroads as common carriers was to make the shipper whole, by payment in full for property lost, or damages to the extent of the injuries sustained. If formerly this liability could be limited by contract with the shipper, it can be done so now, as a matter of legal right, only by the permission or order of the board of railroad commissioners. No such order or permission has been given; at least, the giving of it is not claimed. The judgment of the court below is therefore affirmed." Since this court will, in administering rights arising under the Kansas Law, follow the construction put upon that law by the highest courts of Kansas and consider such construction as a part of the statute, (Carroll Co. v. U. S., 18 Wall. 71; Amy v. Watertown, 130 U. S. 301), it results that the contract here pleaded and tendered in evidence was void under the Kansas statute and decisions interpretive thereof, and was thus not admissible to limit liability.

It is said by the defendant, however, that assuming such effect as last given to the Kansas statute, and assuming in view of Chicago Ry. Co. v. Solan, 169 U. S. 133; Western Union Tel. Co. v. Call Pub. Co., 181 U. S. 92; and Martin v. Pittsburg Co., 203 U. S. 284, that said statutes may be applied to and control contracts for interstate shipments, still such statutes apply only until Congress in the exercise of its power over interstate commerce has otherwise provided, and that upon such provision being made the congressional act displaces the state statute. To support this last, Chicago Ry. Co. v. Solan, supra, is quoted to the effect that, "so long as congress has not legislated upon the particular subject, they (local laws) are rather to be regarded as legislation in aid of such commerce." And, also, Penn. R. R. Co. v. Hughes, 191 U. S. 477, wherein it is said that the states may regulate liability upon interstate shipments "in the absence of congressional action providing a different measure of liability." It is said, further, that under the rule just stated the Kansas statute has been superseded as to interstate shipments,

such as the present one, by the provisions of the act of congress designed to regulate commerce, approved June 29, 1906, 34 Stat. 595, and especially sec. 20, of that act, reading as follows: "That any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed, provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." It is contended that this congressional act displaced the Kansas statute, rendering it immaterial in the present case, and making the contract set up in defense by the appellant company subject only to the test, as to its validity, imposed by the act of congress just quoted. A similar contention was, however, considered in Latta v. Chicago etc. Co., 172 Fed. 850, decided by the circuit court of appeals for this circuit, wherein it was contended, that in consequence of the act just quoted, the law of Nebraska, providing that the liability of railroad corporations as common carriers should never be limited, was rendered inoperative. The court said: "It plainly appears from a reading of the above language that congress has legislated upon the subject of the liability of railroad corporations as common carriers when engaged in interstate commerce. If it were not for the proviso accompanying the language above quoted, we should feel compelled to determine the validity of the contract in question with reference to the law of congress. We think that the proviso found in the law above quoted was placed therein to cover just such a case as is now presented. Congress, undoubtedly, was aware of the many conflicting decisions by the courts in reference to the question as to how far common carriers could limit their

common-law liability by contract, receipt, rule or regulation. It, therefore, was aware that the constitution of Nebraska, as interpreted by her Supreme Court, was in conflict with the rule established by the United States Supreme Court in Hart v. Railway Company, supra; and was also aware that the Supreme Court of Pennsylvania in Grogan v. Adams Express Co., 114 Pa. 523, 7 Atl. 134, 60 Am. Rep. 360, refused to follow the rule established by said case of Hart v. Railway Co., supra; and, therefore, in view of these conflicting opinions, very wisely provided, that the legislation by congress should not deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. We are, therefore, of the opinion that the right which the plaintiff in this case had, under the laws of Nebraska, to sue for the full value of his property was not taken away by the legislation of congress herein referred to, but was preserved to him, and that he may now enforce that right as he has attempted to do." This expression, coming from a court exercising appellate jurisdiction over our own in many matters, is entitled to great respect, and we feel constrained to follow it, and accordingly to hold, that the act of congress did not displace the pre-existing Kansas statute.

It is finally urged that because the plaintiff used the contract in question as transportation from Olathe, Kansas, to San Marcial, New Mexico, he is estopped to claim its invalidity in any respect. However, in accompanying to their destination the remaining animals not killed in transit, plaintiff was simply complying with a condition of the contract, inserted, doubtless, as much for the benefit of the defendant as for the plaintiff, this condition being, that someone should accompany the animals in order to feed, water and otherwise attend to them. We are unable to see how a compliance by the shipper with this requirement of his contract renders operative another provision of the contract that the Kansas statute, to quote from the Latta case, "struck down x x x x x as soon as it was made."

The judgment is accordingly affirmed.

Territory v. Matson, 16 N. M. 135.

Associate Justice Roberts, who was not a member of the court when the case was submitted, does not participate.

### SYLLABUS (BY THE COURT).

