372 P.2d 951

**Jess H. BACHMAN, Plaintiff-Appellee,**

v.

**Theodore J. DOERRIE, Defendant-Appellant.**

No. 6878.

Supreme Court of New Mexico.

June 28, 1962.

Adams, Foley & Calkins, Albuquerque; for appellant.

Lorenzo A. Chavez, Arturo G. Ortega and Melvin L. Robins, Albuquerque, for appellee.

CARMODY, Justice.

The defendant in the court below appeals from a jury verdict and judgment thereon, awarding damages against him for rental under a lease agreement and damages for loss or misuse of some of the property.

The parties will be referred to as they appeared in the trial court.

The plaintiff was a resident of Nevada and owned certain mining equipment which was located in Utah. An employee of the Lost Canyon Uranium and Oil Company, by the name of Winder, was seeking to lease mining property in the state of Utah and was in the process of negotiating a lease on property located at Green River, which would require equipment to work the property. The plaintiff had advertised the machinery for sale and, through a third party, was introduced to Winder, as a result of which it was agreed that the mining equipment would be leased. The written lease agreement was prepared by the plaintiff, somewhat in the following manner: The plaintiff filled out the body of the lease agreement containing a general description of the property, the rental rates, and the location where the equipment was to be used, it being specified that it was to be used generally only in the state of Utah. This part of the agreement was typed up, but apparently the heading as to whom the property was to be leased was not at that time filled in. After the above portion of the lease was prepared, the plaintiff had a telephone conversation with a third party, after which he typed in the name of the lessee as "Lost Canyon Uranium and Oil Company of Albuquerque, New Mexico." At the same time apparently, the date was typed on the instrument. The plaintiff testified that he thereafter mailed a copy of the agreement to Winder, or to someone, at an address in Salt Lake City, in order to obtain final approval of the contract. The plaintiff testified that he at that time signed the original and a copy of the agreement. What happened to the mailed copy we do not know, because Winder denied he ever received the copy. Subsequently, the plaintiff and the defendant had a meeting in Salt Lake City, and further discussion was had with respect to the lease, and portions of it were changed. The plaintiff testified that at the time of the changes, or within an hour period, the words "Theo. J. Doerrie and/or" were typed on the original immediately preceding the name of the Lost Canyon Uranium and Oil Company as lessee.

Plaintiff's testimony is not entirely clear on cross-examination as to when the aforementioned addition was made. However, it does appear that the addition was not placed on the copy of the lease which was given to the defendant. Plaintiff expressly denied that any changes were made in the contract after the defendant signed it, although both the defendant and Winder testified that they did not recall whether or not the words "Theo. J. Doerrie and/or" were on the contract. In any event, it is clear that the words were not placed upon the lease at the request of the defendant, but were added, according to the plaintiff, because "no one knew anything about the

corporation." The contract was signed by the defendant, there being nothing appearing thereon that he signed it in any capacity other than as an individual. He was, however, president of the Lost Canyon Uranium and Oil Company and an owner of somewhat less than ten per cent of its stock. The defendant gave his personal check as a down-payment to the plaintiff at the time of the signing of the lease.

There was conflicting evidence as to the use of the equipment and what information passed between the parties, but, in any event, it was subsequently taken back by the plaintiff, and he claimed damage together with non-payment of rental. It should be noted also that, prior to the execution of the rental agreement, the Lost Canyon Uranium and Oil Company had done no mining in Utah, but had leased some claims through the actions of Winder and intended to use the equipment in developing the claims.

The defendant urges three points of error: (1) That the trial court erred in refusing to instruct the jury as to the legal effect of the defendant's signing the lease agreement without affixing his title; (2) that the trial court erred in instructing the jury that they were to determine as a matter of fact whether the alteration was a material one; and (3) that the trial court erred in determining as a matter of law that the corporation was "doing business" in Utah and that therefore the defendant was personally liable on the contract under the Utah statute, unless the jury found that the contract had been materially altered after its execution.

The third point is determinative of this appeal. Therefore, our discussion will be limited thereto.

The Utah statute in effect at the time was § 16–8–3, Utah Code Annotated 1953, which reads as follows:

"Any foreign corporation doing business within this state and failing to comply with the provisions of sections 16–8–1 and 16–8–2 shall not be entitled to the benefit of the laws of this state relating to corporations, and shall not sue, prosecute or maintain any action, suit, counterclaim, cross complaint or proceeding in any of the courts of this state on any claim, interest or demand arising or growing out of or founded on any tort occurring, or of any contract, agreement or transaction made or entered into, in this state by such corporation or by its assignors or by any person from, through or under whom it derives its interest or title or any part thereof, and shall not take, acquire or hold title, possession or ownership of property, real, personal or mixed, within this state; and every contract, agreement and transaction whatsoever made or entered into by

or on behalf of any such corporation within this state or to be executed or performed within this state shall be wholly void on behalf of such corporation and its assignees and every person deriving any interest or title therefrom, but shall be valid and enforceable against such corporation, assignee and person; and any person acting as agent of a foreign corporation which shall neglect or refuse to comply with the foregoing provisions is guilty of a misdemeanor and shall be personally liable on any and all contracts made in this state by him for or on behalf of such corporation during the time that it shall be so in default; provided, that this section shall not be held to apply to persons acting as agents for foreign corporations for a special or temporary purpose, or for a purpose not within the ordinary business of such corporation, nor shall it apply to attorneys at law as such."

■ Under the above statute, the trial court found, as a matter of law, that the defendant's corporation was "doing business" in the state of Utah. The facts supporting this determination are uncontradicted, the evidence showing that the corporation had obtained leases on some mining claims in Utah prior to the execution of the lease for the equipment. The duration of the term of the mining leases is not indicated, but the equipment lease was for a period of twelve months. Both the equipment lease and the mining leases were executed in Utah, and they involved real and personal property located in that state. The entering into these transactions clearly evidenced an intention on the part of the corporation to do business within the state of Utah. The equipment under the lease could only be used in Utah, and was to be returned to the plaintiff in that state. We turn, therefore, to the decisions of the Utah Supreme Court as to whether, under these facts, the corporation was "doing business" in Utah.

Appellant relies on two Utah cases, which he argues are determinative. These are A. Booth & Co. v. Weigand, 1906, 30 Utah 135, 83 P. 734, 10 L.R.A.,N.S., 693; and Marchant v. National Reserve Co. of America, 1943, 103 Utah 530, 137 P.2d 331. The effect of the decisions in these two cases is that the performance of an isolated transaction, or transactions, within the state does not constitute a doing of business within the statute. In Marchant v. National Reserve Co. of America, supra, the court held that the making of some four deeds by a corporation some two years before the corporation removed its offices to another state was not sufficient to constitute the doing of business under the statute. The court reviewed its prior decisions under this and a previous statute, and stated as follows:

"To summarize, then, the law may be stated to be, from the foregoing decisions, that to be 'doing business' in a state, a corporation must be engaged in a continuing course of business, rather than a few isolated transactions, whether those transactions are within the usual scope of that corporation's business or not. There must be at least some permanence about the presence and business transactions of the corporation within the state."

Also of considerable aid in determining, under the facts of this case, whether the corporation was doing business in Utah is the statement which appears in East Coast Discount Corporation v. Reynolds, 1958, 7 Utah 2d 362, 325 P.2d 853, in which the court said:

"We are inclined to the view that entering into a series of contracts within the state which require certain local acts to be performed in the state, which acts are not merely incidental to the interstate character of the transaction but are separate and distinct therefrom would constitute doing business within the state even though the contracting party breached the contract and failed to perform the acts within the state as agreed. * * *"

Thus, it would appear that although the Utah court has refused to apply the statute where a corporation has only done a single or a few acts within the state, nevertheless we are of the opinion that, under the facts here present, together with the apparent intention (the equipment having to be used in Utah) of doing additional acts of business within that state, the Utah court would determine that the corporation was doing business in that state. Therefore, we believe that the trial court correctly determined that the corporation was doing business within the state of Utah, the provisions of the statute apply, and there was no error in instructing the jury to this effect.

However, appellant's attack on the court's ruling as to the statute is, in effect, a double-barreled one, in that the trial court, in instructing the jury that the corporation was doing business within the state of Utah, also instructed the jury that if they found by clear and convincing evidence that the plaintiff made a material alteration in the lease agreement by adding the words "Theo. J. Doerrie and/or" after the defendant had signed it, then the plaintiff could not recover, because the contract would have been invalidated.

We must apply the law of Utah in our consideration of the contract and the rights of the parties under it. See, Atchison,T. & S. F. Railway Co. v. Rodgers, 1911, 16 N.M. 120, 113 P. 805; and Wooley v. Shell Petroleum Corp., 1935, 39 N.M. 256, 45 P.2d 927. Here, again, we find that a

decision of the Supreme Court of Utah is of considerable aid. In Leggroan v. Zion's Savings Bank & Trust Co., 1951, 120 Utah 93, 232 P.2d 746, the court was faced with the problem of a claimed alteration in a deed, wherein it was contended that the words "the trustee shall receive reasonable costs and expenses" were added. The Utah court determined that this alteration was not a material one, and stated as follows:

" * * * Before an alteration will avoid an instrument it must materially alter the sense of the document and be made after execution and delivery."

Although naturally the facts are different in the instant case, it is obvious that in Utah, when a foreign corporation does business within that state without properly complying with the law, the agent transacting such business becomes personally liable. Therefore, in the instant case, the defendant was personally liable under the lease, whether or not the alteration was made after its execution. The alteration did not and could not change the result of the effect of the statute and was therefore not material—the defendant was liable when he signed the lease, whether named therein or not.

In view of the above, the defendant actually had the benefit of a portion of the instruction to which he was not entitled, and it is to be noted that, nevertheless, the jury found adversely to him. He is hardly in a position to rely on the fact that the trial court erroneously submitted this question to the jury. It is apparent, therefore, that the judgment of the trial court was proper, and we need not consider any of the other errors claimed, because they could not have been prejudicial to the defendant. See, Baros v. Kazmierczwk, 1961, 68 N.M. 421, 362 P.2d 798, and cases cited therein.

From what has been said, the judgment will be affirmed. It Is So Ordered.

COMPTON, C. J., and CHAVEZ, J., concur.

MOISE and NOBLE, JJ., not participating.